CLAUDE E. STEWART, Plaintiff in Error, v. CLAIR G. MARTIN, Doing Business as MARTIN'S CAFETERIA.—No. 38932.—181 S. W. (2d) 657.

Division One, July 3, 1944.

*Calvin & Kimbrell* for plaintiff in error.

*Madden, Freeman, Madden & Burke, John G. Madden* and *William K. Atwood* for defendant in error.

HYDE, J.—This is an action for $10,000.00 damages for injuries from food poisoning claimed to be due to unwholesome food sold to plaintiff by defendant. The court directed a verdict for defendant and plaintiff has appealed from the judgment entered thereon.

Plaintiff's petition alleged that he ate a ham sandwich at defendant's cafeteria; that "the meat contained in said sandwich, although such fact was then unknown to him, was unwholesome and totally unfit for human consumption"; and that "by reason of his having eaten and consumed the same, as aforesaid, he became, and was, poisoned thereby".

As to his health prior to the time he was served this sandwich by defendant, plaintiff said: "I never had any illness, nor any difficulty in eliminating my food. It was never necessary for me to take laxatives of any kind except in connection with the treatment for a cold. My appetite was good and I could eat any kind of food I desired." He said that on the day preceding his illness (Saturday) he had a meal around noon; and that he went down town in the afternoon and about 4:00 P. M. had a bowl of soup and a glass of milk. That evening he and his wife, with his co-employees, "about four couples, had been attending a dance at the Pla-Mor, at 3142 Main Street", and he "drank a cherry coke at the Pla-Mor." After midnight (about 1:30 A. M. Sunday) plaintiff, and his companions, went to defendant's

cafeteria, where defendant "ordered a barbecued ham sandwich." Plaintiff testified about this as follows: "Q. This sandwich, I assume, consisted of barbecued meat and barbecue sauce and bread? A: Yes, barbecued ham. . . . Q. When you ate that sandwich you did not notice anything unusual about the taste of it, did you? A. No, sir. Quite the contrary, it was very good. Q. As a matter of fact it was the best barbecued sandwich you had ever eaten? A. That is the truth. Q. And you had eaten a good many of them? A. I had."

Plaintiff then went home, feeling well, and went to bed. About 5:00 A. M. he awoke with nausea which resulted in vomiting and diarrhea. A physician was called (Dr. Ferguson) who testified, as follows: "When I found him with the diarrhea and vomiting, and bloody stools, and all, and in this condition, I believed it was due to something he had taken into the stomach in the way of food, and I thought it was a food poisoning, and that was my idea at that time. . . . Most cases we see are well in a few days, or a week or two, with diarrhea for a time, and then returning to normal, and most of them do. Q. Do some persist for some time with the condition, that is over a period of time? A. Some poisons, if severe enough, will kill, if the ptomaine is powerful enough. Q. Doctor, from what does ptomaine poisoning commonly occur? A. It is more often due to meat." Plaintiff testified that he was unconscious while the doctor was attending him. He went back to work on the following Tuesday and worked part time for five or six weeks. He then went to a hospital for a week for X-ray examination. The hospital record shows his diagnosis as "Irritability of colon". Findings there were not shown except as to negative reactions to certain tests.

 Defendant concedes, as contended by plaintiff, that the petition states a cause of action on the implied warranty of wholesomeness of the ham sandwich served; and that the sale of unwholesome ham would cast absolute liability upon defendant which could not be avoided by proof of due care. [Race v. Krum, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F 1172 and cases cited; Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 5 A. L. R. 1100; Botti v. Venice Grocery Co. (Mass.), 35 N. E. (2d) 491, 135 A. L. R. 1387; Smith v. Carlos, 215 Mo. App. 488, 247 S. W. 468; Fantroy v. Schirmer (Mo. App.), 296 S. W. 235; Degouveia v. H. D. Lee Mercantile Co. (Mo. App.), 100 S. W. (2d) 336; Nemela v. Coca-Cola Bottling Co. (Mo. App.), 104 S. W. (2d) 773; Hutchison v. Moerschel Products Co., 234 Mo. App. 518, 133 S. W. (2d) 701.] Thus the sole question here is whether plaintiff produced any substantial evidence to prove the breach of warranty alleged, namely, that the meat in the sandwich was unwholesome and the cause of plaintiff's sickness.

 Plaintiff's proof was not sufficient according to the authorities which have considered the question. In Geisness v. Scow Bay

Packing Co. (Wash.), 132 Pac. (2d) 740, the court said: "The un-wholesome character of food is not established, nor is a prima facie case made, merely by showing that the plaintiff became sick after eating it. Poovey v. International Sugar Feed No. 2 Co., 191 N. C. 722, 133 S. E. 12; Gracey v. Waldorf System, 251 Mass. 76, 146 N. E. 232. We might add that the rule last above announced seems to be universal." Likewise, in Frankes, Inc., v. Bennett (Ark.), 146 S. W. (2d) 163, where plaintiff claimed to have been made ill from eating sea scallops, the court said: "We do not think that, the mere fact that a person eats food in a restaurant, hotel or cafeteria and thereafter becomes ill, is of itself sufficient to establish liability on the owner, but the proof must go further and show that some particular article of the food consumed was in fact unwholesome and unfit for human consumption."

Plaintiff has shown nothing more in this case. Not only that, but his own testimony about the sandwich tended to show its whole-someness rather than any unwholesomeness. Furthermore, he partook of food or beverage on four different occasions within eighteen hours (three of them in less than twelve hours) of the time he became sick. He had no medical testimony whatever to prove that eating this ham did cause his illness. [See Hunt v. Armour & Co., 345 Mo. 677, 136 S. W. (2d) 312 and cases cited 136 S. W. (2d) l. c. 316.] His physician only "thought" his condition was food poison; he made no definite statement that it was or, if so, what did cause it. True he said ptomaine is more often due to meat. However, the cases we have cited, show that such effects also occur from soft drinks, milk and milk products, and as suggested in Frankes v. Bennett, from allergy even when there is no unwholesomeness. This leaves plaintiff's case in the realm of speculation and conjecture. Therefore, we hold that the trial court correctly directed the verdict for defendant.

The judgment is affirmed. All concur.