[Civ. No. 47855. Second Dist., Div. Five. Mar. 10, 1977.]

PAT MINDER et al., Plaintiffs and Respondents, v.
CIELITO LINDO RESTAURANT, Defendant and Appellant.

1004

**COUNSEL**

John Brown for Defendant and Appellant.

Ghitterman, Schweitzer & Herreras and Allan S. Ghitterman for Plaintiffs and Respondents.

**OPINION**

**HASTINGS, J.**—This is an appeal from a judgment by the court (jury trial waived) in favor of plaintiffs Pat and Dean Minder (respondents) for damages suffered by them after they had been served and had eaten a meal at the Cielito Lindo Restaurant, appellant (restaurant).

The court awarded Pat Minder $6,450.35 and Dean Minder $6,299.65.

Respondents arrived at restaurant at approximately 12:30 to 1 p.m., on Sunday, December 17, 1972. They had eaten at the restaurant on five earlier occasions. Dean Minder ordered a combination which included a

taco, enchilada, burrito, rice and beans. Pat Minder had a similar combination except she had a tamale in place of the enchilada. They did not notice anything unusual about the meal as it was consumed. Neither ate anything after departing from the restaurant for the remainder of the day. Early that evening respondent, Dean Minder, felt stomach upset, but had no diarrhea or nausea and had no difficulty sleeping that night. He went to work the next day and ate breakfast and dinner and believes he also had lunch. The discomfort to his stomach remained and affected his appetite; however, he had no difficulty sleeping Monday night. He went to work on December 19, and believed he ate three meals that day, and although his stomach discomfort had not improved he had no fever, nausea or diarrhea. On December 20 he ate breakfast and went to work, but left at approximately 11 o'clock a.m. because he was sweating, had a fever and was extremely upset. He went home and immediately went to bed where he stayed until he went to the hospital on December 26.

Respondent, Pat Minder, first felt a little nauseated around 4 or 5 p.m. on Sunday, December 17, and her condition was the same when she awoke the morning of December 18. On the afternoon of December 18, she had the same symptoms only slightly worse. She had a restful night, but she noticed the same condition when she arose on the morning of December 19. At approximately 10:30 a.m. that day she felt very feverish, had chills and went directly to bed. She also remained in bed until going to the hospital on December 26.

James Vernon McNamara, M.D., started treating respondents sometime between December 18 and December 24. He originally treated them for influenza which was the initial diagnosis he also made at the hospital on December 26. Laboratory tests were taken on respondents at the hospital, and on December 29, 1972, he learned that actual bacteria had been cultured from the stools of respondents which was determined to be Shigella Flexneri, Group B. He discussed with respondents the possibility that they received this bacteria from ingesting some contaminated food. He treated them for Shigella bacteria and they recovered sufficiently to be discharged from the hospital on January 2, 1973. He testified that it was his opinion that the illness contracted occurred as a result of contaminated food which respondents had eaten on Sunday, December 17.

On cross-examination, Dr. McNamara testified that Shigella bacteria can be transmitted from toilets, or from any object that might be touched by hand which in turn touches the mouth. Further, he testified that if

respondents had eaten at a restaurant on December 16, 1972, and another restaurant on December 17, 1972, that it would be just as logical that they could have taken contaminated food at either place; furthermore, that he was unable to determine whether the transmission of the disease to Dean Minder took place at the same time as the transmission of the disease to his wife.

Rodney Allen Hiemstra testified on behalf of respondents. He was employed by Ventura County Environmental Health Department and his duties were basically to enforce the state Health and Safety Code which includes inspecting restaurants for sanitation conditions and for violations of the code. On October 27, 1972, he visited restaurant for a regular inspection, and he observed dirt, grease and food particles in the corners of the floor and behind the stove, which was in his opinion unsanitary and unhygienic. He testified to other unsanitary conditions that he observed and code violations, including an ice machine that was without a side panel, thus making the ice subject to contamination from dust and possibly flies. Further, the food storage area did not comply with the code in that the food was stored directly on the floor and not six inches above it. He revisited restaurant on November 9, 1972, and stated that in his opinion the conditions had not changed and constituted an unhealthy or unhygienic condition. He again inspected restaurant on January 26, 1973, and stated that he did not see any change in conditions. That after this inspection, he requested stool samples from all food handlers or employees of the restaurant. The samples were tested and the result was "no enteric." Based on this investigation, he stated he was unable to form any conclusions or opinion with respect to whether or not a food poisoning case had occurred.

Donald Walter Koepp, a supervising sanitarian for the Ventura County Environmental Health Department, testified that he inspected restaurant on February 19, 1971, at which time he noted certain violations of the Health and Safety Code.

Etta Howell and her husband ate at restaurant with respondents. Her dinner was a "little different" from respondents. She was pregnant at the time. She got diarrhea a few days later which lasted about two weeks. Neither she nor her doctor knew what caused the diarrhea. Her husband could not remember what he had for dinner but he experienced no ill effects.

Testimony of restaurant's witnesses was aimed at demonstrating that restaurant was clean, and that respondents were the only parties who had ever complained about becoming sick as a result of eating there. Also, there was testimony that respondents might have eaten at another Mexican restaurant and not at the Cielito Lindo.

The sole issue on appeal is whether respondents met their burden of showing that the probable cause of their illness was contaminated food eaten at restaurant. We conclude that they did not.

Decisional law has recognized that food poisoning cases are difficult to substantiate generally because the suspected food has been ingested and is unavailable for analysis. ■ Nevertheless, like any other personal injury action the plaintiff must prove that the food was unwholesome or unfit and caused his illness, irrespective of whether the action is based on negligence or warranty. (2 Frumer & Friedman, Products Liability, § 25.01, p. 653.) In *Stewart v. Martin,* 353 Mo. 1 [181 S.W.2d 657, 658], the Missouri Supreme Court said: " 'The unwholesome character of food is not established, nor is a prima facie case made, merely by showing that the plaintiff became sick after eating it. [Citations.] We might add that the rule last above announced seems to be universal.' Likewise, in *Franke's Inc.* v. *Bennett,* 201 Ark. 649, 146 S.W.2d 163, 164, where plaintiff claimed to have been made ill from eating sea scallops, the court said: 'We do not think that the mere fact that a person eats food in a restaurant, hotel or cafeteria and thereafter becomes ill, is of itself sufficient to establish liability on the owner, but the proof must go further and show that some particular article of the food consumed was in fact unwholesome and unfit for human consumption.' "

Numerous decisions have established that certain evidence is helpful in proving, or disproving, causation in food poisoning cases.[1] We have compared this kind of evidence with the facts of this case as follows:

■ (1) Where the food or beverage is not outwardly deleterious the burden of proof is greater, and mere proof of illness without a showing of unwholesomeness and causal connection is insufficient. In *Williams* v. *Coca-Cola Bottling Company,* (Mo.App.) 285 S.W.2d 53, the court said at page 57: "Plaintiff's evidence of impurity and cause and effect, depending as it does upon nothing more than proof of the swallowing of a drink and subsequent illness, leaves her proof in the realm of

---

[1] See 2 Frumer & Friedman, Products Liability, *supra,* beginning on page 662.

speculation and conjecture." ▮ In our present case there was no evidence that the food, drinks, dishes, silverware, etc., appeared to be contaminated in any way, as a matter of fact the testimony of respondents was to the contrary.

▮ (2) Illness of others who have eaten the same food at approximately the same time. While this is not controlling it can support an inference of probable cause, although admittedly some other factor is usually required in order to tilt the balance in favor of a finding of unwholesomeness. In 2 Frumer & Friedman, Products Liability, *supra,* at page 667 it states: "While evidence that other persons besides plaintiff became ill may justify a finding of unwholesomeness, it should be noted that evidence that ill effects were not suffered by others may justify a converse result." ▮ We are not inclined to be overly impressed by the relevance of this kind of evidence, however, there is very little evidence, if any, in this category that aids respondents. Robert Howell, who ate with respondents was unaffected. His wife, who was pregnant had diarrhea a few days later but her doctor could not diagnose the cause. There was no evidence of other complaints made to restaurant, and the owner testified there had been none since 1953 when restaurant opened except one that was inconclusive.

▮ (3) Causation may be successfully established by a process of elimination where the food is not outwardly deleterious. ▮ Example: evidence that other persons ate everything that plaintiffs ate except a tamale thereby pointing to the tamale as the cause of illness. The record is devoid of any evidence of this nature.

▮ (4) Scientific analysis of the food can support an inference of probable cause. ▮ None of the food here was analyzed or examined and the stool samples of restaurant's employees were tested and the results were negative. Mr. Hiemstra, the health inspector, testified that based on his investigation, he was unable to form any conclusions or opinions with respect to whether or not a food poisoning case had occurred.

▮ (5) Other causes. If plaintiffs' illness is explainable on grounds other than unwholesomeness, it may be necessary to exclude such causes.

Example: In *Payton* v. *Lee,* 88 Ga.App. 422 [77 S.E.2d 77], plaintiff fell ill after ingestion of potato salad. Her physician diagnosed her illness as food poisoning. The court held that such evidence did not exclude the possibility that plaintiff was suffering from a virus infection which was prevalent in the community at that time. In the case at bar Dr. McNamara testified that if plaintiffs, or one of them, had eaten at a restaurant on December 16, 1972, it would be just as logical that the contamination could have resulted therefrom or it could have come from a source other than food. Either could have transmitted it to the other. ▮ Respondents could not recall whether they had eaten at home or at a restaurant, or both, on December 16.

This case is very similar to *Stewart* v. *Martin, supra,* 181 S.W.2d 657, where plaintiff had eaten a ham sandwich at defendants' restaurant. Plaintiff testified that the sandwich was "very good." He became quite ill and saw a physician, who on seeing plaintiff's diarrhea, vomiting and bloody stools, concluded the illness was caused by meat food poisoning. The court in denying plaintiff recovery said at page 658: "Plaintiff has shown nothing more in this case. Not only that, but his own testimony about the sandwich tended to show its wholesomeness. . . . Furthermore, he partook of food or beverage on four different occasions within eighteen hours . . . of the time he became sick. He had no medical testimony whatever to prove that eating this ham did cause his illness. . . . His physician only 'thought' his condition was food poison. . . . This leaves plaintiff's case in the realm of speculation and conjecture."

The only other evidence relied upon to support respondents claim of causation, was testimony of two health inspectors. ▮ This evidence concerned certain unsanitary conditions found at restaurant. These conditions, absent further evidence, could not establish probable cause. In *Beaupre* v. *Nave,* 13 Cal.App.3d 402 [91 Cal.Rptr. 473], plaintiffs alleged they had contracted infectious hepatitis because they were frequent patrons in defendants' restaurant. The trial court had found that " 'From time to time defendants did violate health and sanitary rules . . . the food, beverages, utensils, bathroom and floors of the restaurant were unclean . . . and were not reasonably fit for the purpose . . . intended.' " (*Id.,* at p. 407.) The trial court nevertheless decided plaintiffs had failed to prove causation. This court, after citing the above findings agreed and said at page 407: "But the sum of all these findings falls short of the necessary finding that anything that the defendants did or failed to do *caused* any injury to the plaintiffs." (Italics in original.)

We conclude that respondents, as a matter of law, failed to meet their burden of showing that the probable cause of their illness was contaminated food eaten at restaurant.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied April 5, 1977.