**P.D. KIRCHER, Respondent,**

v.

**PURINA MILLS, INC., Appellant.**

**No. 71277.**

Supreme Court of Missouri,
En Banc.

Aug. 1, 1989.

Rehearing Denied Sept. 8, 1989.

Richard Brownlee, III and Hallie H. Gibbs, II, Jefferson City, for appellant.

Craig S. Johnson, Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Purina Mills, Inc., appeals from a jury verdict in favor of plaintiff P.D. Kircher on a claim for breach of warranty. The issue on appeal is whether the plaintiff produced sufficient evidence to support the jury's finding that defendant's feed caused plaintiff's damages. The court of appeals reversed and transfer was granted. The Court concludes that there is substantial evidence in the record to support the verdict. Affirmed.

The facts supporting the verdict are as follows: Plaintiff, P.D. Kircher was a dairy farmer in Cass County, who, since 1957, bred, raised and milked registered Holstein cows. In August 1984, Kircher began feeding his cows Purina Dairy Chow Complete XFB–16, which was manufactured by defendant Purina Mills, Inc. The feed was sold through defendant M.E. Buerge d/b/a East Lynne Elevator, but was delivered to Kircher's farm directly from Purina's Kansas City Mill.

A load of feed was delivered directly to the feed bins at Kircher's farm on November 13, 1984 about half of which was discolored, odd shaped, hard as if burned, with an off-odor and an off-taste. After consuming the feed for two or three days, Kircher's cows appeared gaunt, acted nervous and refused to eat. On November 29, 1984, Dr. James Wright, D.V.M., Kircher's veterinarian, visited the farm and upon entering the milk house noticed a ketone odor.[1] Dr. Wright observed that the cows were standing around looking rather gaunt. He also noticed that the cows refused to eat and had loose stool and diarrhea. The cows suffered from enteritis, an upset in the digestive tract, from ketosis, and from an increased incidence of uterine infections. Milk production declined and some cows had subsequent breeding problems.

When health and reproduction problems continued into 1985, Kircher decided to sell his herd. A dispersal sale of all cows was held on May 24, 1986.

On October 26, 1987, Kircher filed a third amended petition against Purina and Buerge for breach of an express or an implied warranty of fitness for consumption. He alleged that the consumption of the bad feed caused damages to his herd. These damages included (1) the value of lost milk production; (2) the value of lost calves resulting from the inability to impregnate the cows; (3) the value of semen straws expended on unsuccessful impregnation attempts; (4) additional veterinary expenses; (5) additional labor expenses; and (6) the reduction in the value of the cows.

At trial, Purina's motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence were denied. A jury found in favor of Kircher and against Purina for $283,427.88. The jury also found against defendant Buerge but awarded no damages. Only defendant Purina appeals.

In reviewing a challenge to the sufficiency of plaintiff's evidence, the Court views the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit

---

**1.** Ketone bodies are produced when the cows' metabolism is off and they start drawing on the fats in their bodies for nourishment.

of all reasonable inferences and disregards defendant's evidence unless favorable to the plaintiff. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 434 (Mo.banc 1985); *Green v. Ralston Purina Company*, 376 S.W.2d 119, 124 (Mo. 1964).

■ The only issue on appeal is whether the plaintiff established causation by substantial evidence. To establish causation in this case the plaintiff was required to present substantial evidence from which a jury could conclude that the injuries to the cows and damages to the plaintiff resulted from the ingestion of defendant's feed. *Green*, 376 S.W.2d at 123–24; *Swanson v. Godwin*, 327 S.W.2d 903, 910 (Mo.1959). Evidence of causation must be based on probative facts not on mere speculation or conjecture but plaintiff is not required to exclude all other possible causes or to prove an absolutely positive causal connection. *Green*, 376 S.W.2d at 123–24; *Swanson*, 327 S.W.2d at 910; *Stevens v. Raney*, 520 S.W.2d 615, 618 (Mo.App.1975); *Joiner v. Kurt's Chip–A–Way Park, Inc.*, 510 S.W.2d 773, 775 (Mo.App.1974). A *prima facie* case of causation is made where the evidence is susceptible to a reasonable inference that injuries to the cows resulted from eating the unwholesome feed. *Green*, 376 S.W.2d at 123–24; *Watt v. St. Louis Public Service Company*, 354 S.W.2d 889, 891 (Mo.1962).

Purina cites *Missouri Farmers Association v. Kempker*, 726 S.W.2d 723 (Mo. banc 1987), for the proposition that the plaintiff must present evidence excluding all possible causes of the cows injuries beside the feed. *Kempker*, discussing causation only to determine the admissibility of damages evidence, mentions that plaintiff's evidence fails to exclude other possible causative factors. *Id.* at 726. This reference was made in the context of noting that the plaintiff failed to produce substantial evidence establishing that defendant's product caused plaintiff's damages. An examination of *Kane v. Chicago, Burlington & Quincy Railroad Company*, 271 S.W.2d

518 (Mo.1954), *cert. denied*, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955), relied on by the Court in *Kempker*, makes it clear that *Kempker* does not require plaintiffs to exclude every causative factor, save that for which the defendant is liable. *Kane* states:

> The burden of establishing by substantial evidence the necessary causal connection between such negligence and the injury alleged rested upon respondent. And, if the evidence merely established that the injury might have resulted from several causes for some but not all of which appellants were liable, the necessary causal connection remained in the realm of conjecture and speculation and respondent's case failed.

*Id.* at 521 (quoting *Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600, 608 (Mo.1937). *Kane* only requires a plaintiff to exclude other causes by presenting substantial evidence that a particular cause for which defendant is liable is responsible for plaintiff's injuries or damages. Such evidence establishes that the injury or damage is not merely the result of several equally probable causes.

■ Kircher's veterinarian Dr. James Wright testified that the Purina feed caused ketosis, enteritis and increased incidents of uterine infections in the cows. These illnesses, according to Wright, were herdwide. Wright also stated that he saw evidence of decreased milk production and increased difficulties in successfully impregnating the cows; problems which, in his opinion, were also caused by the feed. Based on his personal observations, Wright concluded that the percentage of conceptions in the herd worsened as a result of the feed incident. Wright testified that he researched other possible causes for these conditions, but ruled out everything but the feed; that in his opinion "it definitely was the feed."

The testimony of plaintiff's expert Dr. Wright, based on his examination and treatment of the cows, constitutes substantial evidence of causation.[2] *Kimmie v.*

---

2. In formulating his opinion, Dr. Wright did not use the term "reasonable medical certainty".

Use of this phrase, however, is not mandated and does not affect the substantiality of his

*Terminal Railroad Association of St. Louis,* 334 Mo. 596, 66 S.W.2d 561, 564 (Mo.1933). Dr. Wright established a causal connection between the Purina feed and the sickness in the herd. He also linked the feed to some damages suffered by the plaintiff. The veterinarian testified as to some decrease in milk production and to some reproductive difficulties. It is reasonable to infer that these reproductive problems resulted in a decrease in the birth of calves and in a decrease in the market value of some of the cows, since cows that do not reproduce are useless as milk cows. The extent of the damages awarded has not been challenged on appeal. Because there is substantial evidence in the record of a causal connection between defendant's feed and plaintiff's loss, the trial court properly denied defendant's motion for a directed verdict.

The judgment is affirmed.

HIGGINS, J., GREENE and CROW, Special Judges, concur.

BLACKMAR, C.J., concurs in separate opinion filed.

ROBERTSON and RENDLEN, JJ., concur and concur in separate concurring opinion of BLACKMAR, C.J.

WELLIVER and COVINGTON, JJ., not sitting.

BLACKMAR, Chief Justice, concurring.

I find serious problems of causation as to the great bulk of the damages claimed by the plaintiff. We held in *Green v. Ralston Purina Company,* 376 S.W.2d 119 (Mo. 1964), that a plaintiff does not sufficiently establish the element of causation in a feed case simply by showing that the animals consumed the defendant's feed and sickened or died shortly after ingesting the feed. *See also Stewart v. Martin,* 353 Mo. 1, 181 S.W.2d 657 (1944). I do not understand the principal opinion to depart from this long-established holding.

testimony. *Schiles v. Schaefer,* 710 S.W.2d 254, 262 (Mo.App.1986); *Miller v. Weber,* 688 S.W.2d

The plaintiff's veterinarian, Dr. Wright, observed the cows about two weeks after the feeding of the questioned feed had begun. He noted that they appeared gaunt and showed ketosis. The doctor expressed his ultimate conclusion as follows:

Q. Have you, as P. Dee's veterinarian, searched for other possible causes for some of those conditions that you saw?

A. Yes. I looked, and have done a lot of research, and phone calls, and read a lot of articles, for something to come up with, but none of these answer this.

Q. In your own mind, have you ruled out anything causing these problems besides that feed?

A. Yes, I have.

Q. And you've ruled out everything else?

A. Yes.

Q. In your opinion, it was the feed?

A. Yes, my opinion is it definitely was the feed. I don't know if I answered you about two questions back when I said I'd made a bunch of phone calls and so on. That was referring to what aspect of the feed could have caused it, not to any other problem that caused it, other than the feed.

The doctor also testified on direct examination:

\*　　\*　　\*　　\*　　\*　　\*

I really don't know what was wrong with [the feed]. It was abnormal, and I don't know what was wrong with it.

\*　　\*　　\*　　\*　　\*　　\*

Of what was wrong with the feed. I have no question it was the feed, its just that I don't know, nor does anyone else, because we don't have a detailed feed analysis.

The doctor's testimony must be taken as a whole. *Blackburn v. Katz Drug Co.,* 520 S.W.2d 668 (Mo.App.1975); *Downey v. Spot Martin, Inc.,* 328 S.W.2d 399 (Mo. App.1959). Sometimes a witness's testimo-

389, 391 (Mo.App.1985).

ny may be internally inconsistent and self-destructive, so that it loses its quality as substantial evidence. This is so as to expert testimony. The doctor says in effect that he is sure that the feed caused the damage, but cannot say why this is so. Up to this point the evidence hardly sustains the plaintiff's burden.

Most of the cases cited in the principal opinion for the proposition that the plaintiff need not exclude all other possible causes are not feed or animal medication cases. Courts have recognized that animals, like all of us, are mortal and that they sicken and die from a variety of causes. When food is involved there should be some burden to exclude other nutritional or environmental conditions which could have caused the same damage. Suppose that a herd had been fed feed from two different manufacturers at the same time. I doubt that testimony similar to Dr. Wright's would have been sufficient to support a finding against one of these manufacturers, unless some basis were shown for differentiating the challenged feed from the other feed. *Cf. Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984). Thus I am concerned about the veterinarian's failure to exclude as a causative factor the removal of the cows from pasture and their being placed on ensilage, shortly before their illness manifested itself. His testimony that he did some reading and couldn't find anything else is hardly substantial.

This defendant, however, put all its eggs in one basket, or perhaps more accurately, all its milk in a single can. Its sole point urged for reversal is as follows:

I. The Circuit Court Erred By Overruling Appellant's Motions For Directed Verdict At The Close Of Respondent's Case And At The Close Of All Of The Evidence And By Overruling Appellant's Motion For Verdict In Accordance With Motion For Directed Verdict And By Entering Judgment In Favor Of Respondent Because Respondent Failed To Establish Causation By Substantial Evidence In That Respondent's Evidence Failed To Show By A Reasonable Veterinary Certainty Or Reasonable Probability That The Partial Consumption Of The Feed Caused Respondent's Alleged Damages To His Cows And That He Had Excluded All Other Possible Causes Of Respondent's Alleged Damages.

With this broadside against the entire verdict, plaintiff is entitled to affirmance if he can show that the feed was defective and that the defects caused any damage whatsoever to the cows. Here there is evidence from the plaintiff and from the veterinarian that the food looked and smelled different from the feed usually supplied by this manufacturer. The jury could then apply the veterinarian's testimony so as to find that the feed was defective and that the defects caused some damage to the dairy herd. The veterinarian's testimony of what he observed on his first visit is much more substantial than his speculations about damages running many months into the future. The evidence shows a decline in milk production beginning in November of 1985 and continuing on a downward course for several months. This evidence of some damage is minimally sufficient to survive a motion for directed verdict or judgment n.o.v.

The defendant objected to some of the evidence concerning damages, on grounds of want of foundation and speculative character. I believe that the veterinarian engaged in much unsubstantiated speculation. But the amount of the verdict is not challenged, and no trial error is assigned as ground for reversal. Objections based on *Missouri Farmers Association v. Kempker*, 726 S.W.2d 723 (Mo. banc 1987), might well have been properly taken to much of the damage testimony, and preserved on appeal. As the principal opinion points out, *Kempker* did not involve the submissibility of the plaintiff's case but rather the exclusion of evidence of more remote damage claimed by the plaintiff. We were not obliged to reverse unless persuaded that the exclusion of the evidence was erroneous, and were not limited to grounds presented in objections in the trial court.

This case should not be an invitation to the raisers of livestock whenever a herd sustains illness or loss or whenever the

feed merchant tries to collect the bill to sue the feed manufacturer, and to commandeer the services of a veterinarian disposed to please his client, so to indict the feed without proving that it was defective. Here, however, there is a showing of a defect in the feed and expert testimony that this defect could cause some damage. I agree, therefore, that the judgment must be affirmed.