# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-3888

_____

Douglas R. Tenbarge; Lilly Tenbarge,      *
                        *
        Appellants,       *
                        * Appeal from the United States
    v.                   * District Court for the
                        * Eastern District of Missouri.
Ames Taping Tool Systems, Inc.,   *
                        *
        Appellee.         *

_____

Submitted:  June 11, 1997


Filed:  October 22, 1997

_____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEEZER,       Senior Circuit Judge.[1]

_____

HENLEY, Senior Circuit Judge.

      Douglas R. and Lilly Tenbarge appeal from a judgment of the district court granting summary judgment in favor of Ames Taping Tool Systems, Inc.  We reverse and remand for further proceedings.

------

[1]The Honorable Robert R. Beezer, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

**Background**

From 1983 until 1993, Douglas Tenbarge worked as a drywall installer. His primary duty was to apply drywall compound and tape along the seams of drywall panels. In applying the compound and tape, Tenbarge used an Ames Auto Taper, known as a Bazooka. In 1991, Tenbarge began to experience numbness in his hands and fingers and saw a physician, who eventually referred him to Dr. Richard Chusak, a plastic surgeon. In November 1992, Dr. Chusak diagnosed bilateral carpal tunnel syndrome (CTS), and in December 1992 and January 1993 operated on both of Tenbarge's hands.

In 1994, Tenbarge and his wife filed an action in Missouri state court against Ames, the manufacturer and lessor of the Bazooka. Tenbarge raised Missouri law claims of strict liability, negligence, and breach of warranty. His wife raised a loss of consortium claim. After removing the action to federal district court, Ames moved for summary judgment. Citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the company argued that there was an "insufficient scientific basis to prove that Tenbarge's use of the Bazooka caused him to suffer [CTS]." J.A. at 45. In support of its motion, Ames submitted portions of the depositions of William Nelson, the Tenbarges' ergonomics expert, and Digby Willard, their design expert. The Tenbarges opposed the motion, asserting there was sufficient proof

of causation. In part, they relied on Dr. Chusak's deposition, in which he expressed the opinion that the repetitive and strenuous use of the Bazooka caused Tenbarge's CTS and that there were no other contributing factors. In reply, Ames submitted portions of the deposition of Dr. Peter Nathan, who, at the company's request, examined Tenbarge in February 1996. Dr. Nathan stated that although no one knew the precise cause of Tenbarge's CTS,

Tenbarge presented several risk factors associated with CTS. The doctor noted that Tenbarge had rheumatoid arthritis, was "somewhat" overweight at 220 pounds, and had admitted to drinking twelve beers a week.

The district court granted Ames' motion for summary judgment. The court found it unnecessary to resolve the Daubert issue, holding that even if the expert testimony was admissible it would fail to establish that the Bazooka was a substantial factor in causing Tenbarge's CTS. The court acknowledged Dr. Chusak's opinion that the Bazooka caused Tenbarge's CTS, but discounted his opinion because he had not ruled out other work and non-work related activities that could have contributed to the CTS. In particular, the court noted that Tenbarge had rheumatoid arthritis, was overweight, and consumed alcohol. The Tenbarges filed a post-judgment motion, arguing that the court had improperly granted summary judgment sua sponte. They asserted that Ames had not raised a causation issue in its summary judgment motion and that the court erred in relying on Dr. Nathan's deposition because they had not had an opportunity to respond to it. The Tenbarges argued that Dr. Nathan's conclusions about contributory factors were either refuted or unsupported by the record, citing to portions of Dr. Chusak's and Dr. Nathan's depositions and to additional medical records. The district court denied the motion, holding it had not raised the issue of

causation sua sponte and refusing to consider the additional citations or evidence.

## Issues

"In reviewing a decision of a district court to grant summary judgment we must apply the same strict standard as the district court."  <u>Prudential Ins. Co. v. Hinkel</u>, 1997 WL 422798, at \*1 (8th Cir. July 30, 1997) (No. 96-3684) (internal quotation

omitted).  We repeat those well-established standards. "A court should grant summary judgment if 'there is no genuine issue of material fact' and 'the moving party is entitled to a judgment as a matter of law.' " Id. (quoting Fed. R. Civ. P. 56(c)).

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)) (emphasis added).  In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.' " Prudential, at *1 (quoting Fed. R. Civ. P. 56(c)). "[I]n ruling on a summary judgment motion, the [c]ourt views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence." Id. at *2.

Applying those standards, we believe that the district court erred in granting summary judgment. Even if Ames had generally raised a causation issue in its summary judgment motion, the district court erred in relying on Dr. Nathan's deposition. Because Ames did not initially rely on the doctor's deposition or any medical

-6-

evidence in support of its summary judgment, it did not fulfill its burden of "identifying those portions" of the record which "demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Thus, the Tenbarges did not have a meaningful opportunity to show that there were disputed issues of fact as to the alleged contributory causative factors.  Cf. Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995) (sua sponte grant of summary judgment "proper only where the party against whom judgment will be entered was given sufficient advance notice and an adequate

opportunity to demonstrate why summary judgment should not be granted'') (internal quotation omitted).

On appeal, the Tenbarges assert that had they known the district court would rely on Dr. Nathan's deposition they would have been able to demonstrate, as they attempted to do in their post-judgment motion, the existence of disputed issues concerning the alleged contributory causative factors. For example, as to the rheumatoid arthritis, the Tenbarges point out that Dr. Nathan conceded that the rheumatoid arthritis was first diagnosed in September 1993, almost two years after Tenbarge began experiencing CTS symptoms; that the diagnosis did not refer to his wrists; and that there was no evidence of active rheumatoid arthritis in Tenbarge's wrists or hands during the doctor's 1996 examination. J.A. at 818-19. The Tenbarges also note that Dr. Chusak testified that he saw no evidence of rheumatoid arthritis at the time of his examination. J.A. at 224. As to Tenbarge's alleged weight problem, the Tenbarges note that there was no record support for Dr. Nathan's belief that Tenbarge weighed 220 pounds, and that September 1991 medical records show that at six feet tall and 190 pounds he was not overweight. J.A. at 666. As to alcohol consumption, the Tenbarges point out that Dr. Nathan stated he did not know how much consumption would contribute to CTS, believed that "one drink a day keeps the doctor away," and had no evidence that Tenbarge drank more than one to two beers a day. J.A. at 821. Viewing the Tenbarges' evidence and all reasonable inferences therefrom in the light most favorable to them, we agree with them that there are disputed issues of fact as to

alleged contributory causative factors.[2]

---

[2]The district court also believed that there were disputed issues of fact as to whether Tenbarge's work-related activities contributed to his CTS. In arriving at this conclusion, the court did not view the evidence in the light most favorable to the Tenbarges, as it was required to do. Even Dr. Nathan stated that "as far as [Tenbarge's] work was concerned . . . none of it presented . . . a risk factor in terms of [CTS]." J.A. at 823.

The Tenbarges go on to argue that, even if there were no disputed issues of fact as to alleged contributory factors, the district court still would have erred in granting summary judgment. They contend that the district court misapplied Missouri law by placing the burden on them to disprove other possible causes for CTS. Again, we agree. Although in some jurisdictions a plaintiff may be required to present evidence to "eliminate other causes that may fairly arise from the evidence[,]'' Kaplon v. Howmedica, Inc., 83 F.3d 263, 267 (8th Cir. 1996) (applying Arkansas law) (internal quotation omitted), the Missouri Supreme Court has held that in order to make a submissible case on causation, a plaintiff is not required "to exclude every causative factor, save that for which the defendant is liable." Kircher v. Purina Mills, Inc., 775 S.W.2d 115, 117 (Mo. 1989) (en banc). Nor is a plaintiff required to "prove an absolutely positive causal connection." Id. Instead, a submissible case on " 'causation is made where the evidence is susceptible to a reasonable inference that injuries' to plaintiff resulted from defendant's product." Ray v. Upjohn Co., 851 S.W.2d 646, 654 (Mo. Ct. App. 1993) (quoting Kircher, 775 S.W.2d at 117). In Kircher, the court explained that "[s]uch evidence establishes that the injury or damage is not merely the result of several equally probable causes." 775 S.W.2d at 117.

Based on our review of Missouri cases, we conclude that Dr. Chusak's opinion that Tenbarge's use of the Bazooka caused his CTS is sufficient evidence of

-10-

causation.[3]

---

[3]We note that in discussing causation both the Tenbarges and the district court use the term "substantial factor." In Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 861 (Mo. 1993) (en banc), the Missouri Supreme Court noted some confusion between the "substantial factor" causation test and the "but for" causation test. The court observed that many cases, "although called substantial factor cases, are required to meet a 'but for' causation test." Id. The court explained that " '[b]ut for' is an absolute minimum for causation because it is merely causation in fact." Id. at 862. The court then clarified that the " 'but for' test for causation is applicable in all cases except those involving two independent torts, either of which is sufficient in and of itself to cause the injury." Id at 862-63. In this case, it appears that the Tenbarges are relying on "but for" causation, that is, "but for" the use of the Bazooka Tenbarge would not have developed CTS. See Gage v. Morse, 933 S.W.2d at 416-417 ("but for" doctor's negligence plaintiff was harmed despite intervening infection); Ray, 851 S.W.2d at 652 (chemical caused plaintiff's asthma even though other risk factors may have been present).

In fact, this case is similar to Ray. In that case, a jury awarded plaintiff $1.5 million for respiratory problems caused by his inhalation at work of fumes from a chemical manufactured by the defendant. On appeal, the defendant argued that the plaintiff failed to make a submissible causation case, noting testimony that plaintiff's problems "could have been caused by other chemicals, dust, or his smoking of cigarettes," and that plaintiff had not proved that he had only been exposed to defendant's chemical. Ray, 851 S.W.2d at 654. Citing Kircher, the court rejected defendant's argument, noting that at least two doctors had testified that the plaintiff's problems were caused by inhalation of defendant's fumes. Id. at 653. See also Gage v. Morse, 933 S.W.2d 410, 416-17 (Mo. Ct. App. 1996) (sufficient evidence of causation based on physician's testimony that initial treatment of plaintiff's knee caused harm despite evidence of intervening infection); Nugent v. Owens-Corning Fiberglas, Inc., 925 S.W.2d 925, 930 (Mo. Ct. App. 1996) (sufficient evidence of causation based on expert testimony that exposure to asbestos was cause or contributing cause of disease); Kircher, 775 S.W.2d at 117 (sufficient evidence of causation based on testimony of veterinarian that contaminated feed caused sickness).

As an alternative basis for affirmance, Ames renews its argument that the testimony of the Tenbarges' design and ergonomics experts was insufficient under Daubert. We decline to address the Daubert issue in the first instance. "The Supreme Court in Daubert makes it plain that the trial court is to act as a gatekeeper in screening [expert] testimony for relevance and reliability, that is, make an assessment whether the reasoning and methodology underlying the testimony is

-12-

scientifically valid."  Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296-97 (8th Cir. 1996), cert. denied, 117 S. Ct.

1552 (1997).[4]  In fact, Ames acknowledges that after filing its summary judgment motion, it filed a motion in limine to exclude the expert evidence and requested a <u>Daubert</u> hearing, which the district court denied as moot. We also decline to address in the first instance Ames' other arguments raised on appeal as grounds for an affirmance.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

------

[4]We note that the Ninth Circuit has recently held that <u>Daubert</u> is inapplicable to a mechanical engineer's testimony in a products liability case.  <u>McKendall v. Crown Control Corp.</u>, 1997 WL 448265 (9th Cir. Aug. 8, 1997) (No. 95-56657).  However, in <u>Peitzmeier</u>, this court held that <u>Daubert</u> is applicable to an engineer's testimony.  97 F.3d at 297.