Christopher THOMPSON, Plaintiff-Appellee,

v.

SOUTHERN PACIFIC TRANSPORTATION CO., d/b/a Southern Pacific Railroad Co., et al., Defendants,

Monsanto Corporation, Defendant-Appellant.

No. 86–3018.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1987.

John C. Reynolds, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for Monsanto Co.

Daniel E. Becnel, Jr., Robert Becnel, Reserve La., for plaintiff-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A railroad brakeman worked at various times during a three-year period aboard a train that entered an industrial plant site contaminated by dioxin. After he had been fired by the railroad for being intoxicated on the job, he sued the owner of the contaminated area contending that a disease from which he was suffering, porphyria, had been caused by his exposure to dioxin. The jury returned a verdict in his favor, but, finding that the worker had failed to offer any substantial evidence to support the thesis that his disease was caused by his exposure, we reverse the judgment in his favor and enter judgment for the plant owner.

## I.

Christopher Thompson's work as a brakeman for the Southern Pacific Railroad often brought him to Monsanto's Luling, Louisiana plant which was served by the railroad. After he had been employed for three years, he was fired in 1981 for being intoxicated on duty. Soon thereafter, Thompson sued Southern Pacific and Monsanto, alleging that his occupational exposure to hexachlorobenzene or other chemicals at the Luling plant had caused his severe and disabling case of porphyria cutanea tarda. Porphyria cutanea tarda is an illness characterized by chronic skin lesions and abnormal liver function; it may be caused by administration of estrogens, consumption of alcohol, or exposure to certain chemicals. Thompson based his claim against Southern Pacific on the Federal Employers' Liability Act and his claim against Monsanto on Louisiana negligence law.

While discovery was being conducted, Monsanto publicly announced that dioxin had contaminated a small area of the Luling plant site near the Southern Pacific railroad tracks. Monsanto linked the contamination to periods in 1965 and 1967 when the chemical 2,4,5–T, a precursor of dioxin, was loaded and unloaded at the plant. Meanwhile, discovery showed that no hexachlorobenzene had been found at the Luling facility. Thompson then contended that dioxin caused his porphyria.

On the eve of trial, Thompson settled his claim against Southern Pacific for $5,000. After hearing the evidence, the jury rendered a $200,000 verdict against Monsanto. Monsanto moved for a new trial, judgment notwithstanding the verdict, and a remittitur, but the district court judge denied all three motions. Monsanto appeals on the grounds that the verdict was not supported by sufficient evidence and that Thompson's counsel engaged in improper behavior during trial.

## II.

Most federal circuits, including this one, apply a federal standard when evaluating the sufficiency of evidence in diversity cases.[1] A judgment notwithstanding the verdict should be granted when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict."[2] A mere scintilla of evidence will not create a jury question; instead, "[t]here must be a conflict in substantial evidence."[3] Deferring fully to the jury's prerogatives in weighing conflicting evidence and in determining the credibility of witnesses,[4] we find a lack of substantial evidence to support the verdict, for Thompson did not introduce sufficient evidence at trial to establish a link of causation between his alleged exposure to dioxin at Luling and the development of his porphyria.

1. *Boeing Co. v. Shipman*, 411 F.2d 365, 368 (5th Cir.1969) (en banc); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.06 (2d ed. 1986).

2. *Id.* at 374; *Eyre v. McDonough Power Equipment, Inc.*, 755 F.2d 416, 419 (5th Cir.1985).

3. *Boeing*, 411 F.2d at 374–75.

4. *Id.* at 375.

Thompson called several expert witnesses to support his theory of causation. One, a chemical engineer, described the chemical composition of dioxin and the methods of sampling soil that might be contaminated with dioxin. He further testified that dioxin contaminating the soil can be ingested, inhaled, or absorbed into the body of an individual working nearby. The engineer did not testify, however, about Thompson's degree of exposure to dioxin; he did not know where Thompson worked at Luling or the amount of time Thompson spent at the plant site. In short, his testimony simply indicated that someone working around dioxin-contaminated soil might develop porphyria and described how that possibility could be established without specifically addressing Thompson's exposure. A good deal of his testimony, in fact, focused on reports of dioxin exposure at locations other than Luling. A second expert, a toxicologist, did testify that dioxin caused Thompson's porphyria. He based his opinion on the fact that Thompson worked at a site where dioxin was found and therefore "definitely could have come into contact with it." He did not, however, have any knowledge about the amount or duration of Thompson's exposure. There was, then, an insufficient factual basis for his opinion.[5] On the other hand, Monsanto's toxicology expert testified that, in view of the dioxin measurements made at the site, Thompson would have received an exposure to dioxin less than 2% of the recommended maximum amount for residential areas, an exposure insufficient to cause porphyria. He further testified that Thompson's symptoms were not consistent with dioxin-induced porphyria: in all previous cases of porphyria associated with dioxin exposure, chloracne has accompanied the porphyria, and Thompson has never suffered from chloracne.

The testimony by the physicians called as experts also failed to substantiate the ultimate issue of causation—that dioxin caused Thompson's porphyria. A neurologist, introduced by Thompson, stated that dioxin exposure *could* cause the kinds of symptoms that Thompson experienced, but did not offer an opinion as to what in fact had caused Thompson to suffer from the disease. While he did not believe it was caused by alcohol, he testified that he had insufficient information about the concentration of dioxin at Luling or the amount of time Thompson worked there to decide whether exposure to dioxin caused the porphyria.

Five other physicians testified, all of whom had treated Thompson for his porphyria, and none believed that dioxin had caused it. One of the doctors was qualified as an expert in the field of internal medicine with specialized training and work in the specific areas of liver diseases and porphyria. He testified that, in his opinion, Thompson's illness was related to his consumption of alcohol and he too thought that Thompson's failure to develop chloracne excluded dioxin as the cause of the porphyria. Two of the other physicians, both specialists in internal medicine, attributed the illness to Thompson's alcohol consumption. The remaining two physicians either were not asked to give an opinion or had no opinion regarding causation.

Having found insufficient evidence to support the verdict, we need not reach Monsanto's claim of improper behavior by plaintiff's counsel.

For these reasons, we REVERSE and enter judgment for the defendant.

---

**5.** *Calhoun v. Honda Motor Co.,* 738 F.2d 126, 131–32 (6th Cir.1984).