Dennis **MASCARENAS** and Maureen **Mascarenas**, Plaintiffs,

v.

**MILES, INC., a/k/a Chemagro, a/k/a Mobay Corporation, a/k/a Bayer U.S.A., Inc., Defendant.**

No. 95–0491–CV–W–6.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 19, 1997.

William H. Pickett, David T. Greis, Kansas City, MO, for Plaintiffs.

Patrick Lysaught, Valeria J. Blevins, Shook Hardy & Bacon L.L.P., Kansas City, MO, James L. Moore, John W. Ghezzi, Holtzman Urquhart & Moore, P.C., Houston, TX, for Defendant.

### *MEMORANDUM AND ORDER*

SACHS, District Judge.

This is a products liability action based upon contentions that plaintiff Dennis Mascarenas contracted an extremely rare form of cancer as a result of alleged exposure to the crop pesticide Guthion 2L ("Guthion") manufactured by Bayer Corporation ("Bayer"), formerly known as Miles, Inc. The exposure allegedly occurred during his employment as a border patrol agent for the United States Border Patrol. In a Memorandum and Order dated July 1, 1997, the court held that plaintiff's claims seeking recovery based on a failure to warn were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136–136y (1982) ("FIFRA"). Plaintiff's remaining claims are brought under theories of strict products liability for defective design and/or manufacture, negligence in design and/or manufacture, and

breach of implied warranty by manufacturing/design defect.[1]

Defendant has renewed its motion for summary judgment on the remaining claims.[2] Defendant has also filed a motion to strike or exclude testimony offered by two of plaintiff's expert witnesses. who offered opinions on the causation of plaintiff's cancer. Defendant has also filed a motion to strike portions of plaintiff's response to defendant's motion for summary judgment.

In its summary judgment motion, defendant makes two causation, or cause in fact, arguments. Defendant argues that plaintiff cannot establish that he was exposed to Guthion and that, even assuming that plaintiff could show exposure, he has no medical or scientific evidence establishing that exposure to Guthion probably caused his cancer.[3] In response, plaintiff argues that the evidence demonstrates the existence of genuine issues of material fact that preclude granting summary judgment. For the reasons set forth below, the defendant's motion for summary judgment and separate motion to strike two of plaintiff's expert witnesses will be granted and judgment will be entered in favor of defendant.[4]

### Standards for Summary Judgment

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established a right to judgment with such clarity as not to give rise to responsible controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions are, however, "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive. determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the present case, although the proceedings have been time-consuming and tedious, resolution as a matter of law, if sound, will save much time and expense.

The movant bears the initial burden of demonstrating to the court that an essential element of the non-moving party's case is lacking. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (1986); *Mt. Pleasant v. Assoc. Electric Coop.,* 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53 (1986) (non-moving party must come forward with sufficient evidence to demonstrate that there is a factual controversy as to contested element, or explain why such evidence is not currently available). The non-moving party must demonstrate "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. In all cases, however, the facts must be viewed in the light most favorable to the non-moving party, who must be given the benefit of all reasonable inferences which

1. The other plaintiff in this action, Maureen Mascarenas, the wife of plaintiff Dennis Mascarenas, lodges a claim (Count V) against Bayer for loss of consortium. Because her claim is necessarily derivative of, and dependent upon, her husband's claims, the court does not separately address it herein. References in this opinion to a single plaintiff (with corresponding placement of apostrophes) are intentional.

2. The defendant originally moved for summary judgment on August 23, 1996. Except for the FIFRA preemption issue, the court denied the summary judgment motion as premature. Discovery was incomplete.

3. Despite allegations in the Complaint suggesting exposure to Baythroid, another product manufactured by Bayer, plaintiff's responsive suggestions, discovery and expert testimony have focused only on Guthion 2L as the alleged source of exposure and cause of plaintiff's cancer.

4. The ruling here renders moot the defendant's motion to strike portions of plaintiff's response to defendant's motion for summary judgment. The court will examine all factual allegations as gleaned from its review of the record and the parties' briefing, as clarified in oral argument.

may be made from the facts disclosed in the record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Raschick v. Prudent Supply, Inc.,* 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). The court may thus weed out patently unreasonable concepts and inferences, and cut through obvious confusion between mere possibilities and arguably probable factual conclusions. With these principles in mind, the court turns to an analysis of the defendant's motion.

### Undisputed Factual Background

Plaintiff was employed as a border patrol agent for the United States Border Patrol during 1989 and 1990. Plaintiff's responsibilities included patrolling the Texas–Mexico border in an attempt to prevent, detect and apprehend Mexican citizens crossing into the United States. At least part (and perhaps most) of the area that plaintiff patrolled was planted with various crops, although plaintiff's testimony indicates that he rarely actually entered into planted fields either to conceal himself or apprehend illegal aliens. In an effort to control insects and pests, these crops were at various times sprayed with various insecticides and pesticides. Plaintiff was exposed to these chemicals but is naturally unable to recall specific dates or pinpoint exactly how many exposures occurred. Indeed, the evidence reveals at most only two specific occasions. In late July 1989 plaintiff was sprayed by an aerial applicator applying pesticides to a sugarcane field adjacent to where plaintiff was patrolling.[5] Plaintiff, who had cut his elbows and forearms on the sugarcane, noticed a sticky clear substance on his arms and uniform. Another border patrol agent, Terry Cooper, noticed a yellow plane leaving the general vicinity and testified that plaintiff was "wetted down"

with the chemical. Shortly after the drenching incident, plaintiff sought medical attention to treat a body rash, and because he experienced chest pains and difficulty breathing. The other probable exposure to a pesticide or insecticide occurred on an unknown date when plaintiff got an unknown white powder on himself when walking. through a field planted with an unknown crop.[6]

In spring 1993, a tumor was discovered and plaintiff was diagnosed with lymphoplasmocytic neoplasm, a form of cancer. It appears that plaintiff's is the fourth known case in the world. The cancer is treated by plaintiff as being in the lymphoma family, and thus not entirely uncommon. After nasal surgery and treatment, the condition was either cured or in remission. A year or so later, plaintiff conducted an "investigation" to determine what pesticides were being sprayed in crops in the area of southern Texas, more or less the Rio Grande Valley, where plaintiff was stationed. Plaintiff had not previously tried to find out what pesticides he was exposed to when he worked as a border patrol agent, even following the one specific instance in July 1989 after which plaintiff sought medical treatment. Nor had plaintiff previously sought to determine what companies may have been applying pesticides in the area or where or when precisely he may have patrolled.

As part of the investigation, plaintiff sought the assistance of the Texas Department of Agriculture. After plaintiff was unable to identify any particular sugarcane field where plaintiff was sprayed, the Department closed the matter. Plaintiff candidly admits that he realizes that there are a lot of different pesticides—manufactured by a lot of different companies—that are used in the Rio

---

**5.** Plaintiff's complaint and subsequent lengthy discovery focused solely on application of Guthion to sugarcane and not to cotton. The record reflects that Guthion was used more frequently on cotton than sugarcane during the relevant time period. Plaintiff's focus is reflective of his causation difficulties. His general inability to pinpoint exposures makes it more appealing to focus his attentions (and his complaint) on the one incident he does specifically recall with detail, an exposure involving aerial application of pesticide to sugarcane. Plaintiff's complaint and the parties' briefing reflects this

focus on application of Guthion to sugarcane and the court will rule accordingly. There is no evidence in the record supporting plaintiff's exposure to Guthion applied to cotton, except to the extent that all farm workers, and the population in the Valley in general, may have been exposed to minuscule airborne remnants of Guthion applied to the crops.

**6.** There is no showing that Guthion leaves a white powder or that other pesticides do not.

Grande Valley on the various crops. Of all the manufacturers of all the pesticides that plaintiff may have been exposed to, plaintiff eventually settled on Bayer (and Guthion) and initiated suit. According to plaintiff, his investigation revealed that "some of the spraying was produced by Bayer." According to plaintiff's wife (as noted *supra*, also a plaintiff in this action), they settled on Bayer after talking to a spray pilot at an airfield in the general area where plaintiff patrolled, who informed plaintiff that he sometimes used Guthion on sugarcane.[7] To date, plaintiff claims no knowledge of what pesticides he was exposed to and by whom (even as to the July 1989 and other specific incident), stating only that he believes he "was exposed to whatever it was they were spraying out there."

Plaintiff has deposed four landowners, two spray pilots and a cotton gin manager. All lived, worked or owned land in or around the Rio Grande Valley during the relevant time period. Woodie Cellum, a landowner, testified that "I didn't use any Guthion on sugarcane" and did not recall whether he used it on cotton. John Holcomb, also a landowner, testified that he does not "recall using any Guthion on my crops" and, in any event, that he "quit spraying in 1987...." In other testimony he said Guthion was used on sugarcane for an unspecified period when Azodrin was taken off the market—again, at an unspecified time. Arthur C. Fuller, a farmer, testified that, although he used it on cotton, "I don't think I ever used Guthion on sugarcane." Jesse Ray Russell, a farmer, testified that to his recollection he had never used Guthion on sugarcane. Michael Yeary, formerly a farmer and now a manager of a gin, testified that as a farmer he used Guthion on cotton but not on sugarcane.[8] As manager of the gin, Yeary testified that he knows the gin sold Guthion in 1989 and 1990, but he does not know on what crops the purchasers applied the Guthion or when.

Records of the gin, supplied after oral argument of the motion, show Guthion sales to farm operators Holcomb, Bradford and Beckwith in early 1989. Russell has identified these persons as owners of farmland in the area where the exposure occurred, between Highway 281 and the Rio Grande. No records of the sale of other insecticides or pesticides to those farmers have been examined, apparently, and it is not clear that the only farmland of these individuals was in the area in question or that Guthion was applied to sugarcane instead of cotton.

William Wayne Nichols, a pilot who retired in 1989 or 1990 and who owned Weslaco Flying Service, testified that he simply "can't say yes or no" whether he, or any other pilot of Weslaco Flying Service, sprayed Guthion on sugarcane in the relevant area during 1989 or 1990. He said Azodrin was so applied "several years ago" and that Baythroid and perhaps Karote was so used. He named seven chemicals used on cotton, in addition to Guthion. William Sandlin, also a pilot and now the owner of the Mercedes Flying Service, testified that he sprayed Guthion on cotton (although the record is unclear as to whether this spraying of cotton occurred in the Rio Grande Valley), and that to his knowledge he had never sprayed Guthion on sugarcane. According to the testimony of these two pilots, at least two of the aerial applicator companies in the area during the relevant time period, Weslaco Flying Service and Mercedes Flying Service, used at least some planes that were yellow or mostly yellow.

Stephen Frazier, who was a sales representative of Bayer, testified that Guthion has been sprayed on sugarcane, but on a "limited basis" during the years 1987–91. He said such use was reduced toward the end of the 1980s.

### Analysis

#### I. Choice of Law.

■ A federal court sitting in diversity applies state substantive law. In a diversity

---

7. The pilot, Nichols, is not suspected of piloting the plane in question, or working for the company that may have owned the plane. No pertinent information has been obtained from the company in question, Mercedes Flying Service.

8. Mr. Yeary also indicated that while he had heard of using Guthion on sugarcane (though he could not recall any specific individual who had ever done so), he was under the impression that it "was not beneficial to use it."

action such as this case, a federal court applies the choice of law rules of the state in which it sits. *Birnstill v. Home Savings,* 907 F.2d 795, 797 (8th Cir.1990). In tort actions Missouri courts apply the most significant relationship test found in the Restatement (Second) of Conflicts of Law (1971). *See Birnstill,* 907 F.2d at 797 (citing *National Starch and Chem. Corp. v. Newman,* 577 S.W.2d 99, 102 (Mo.Ct.App.1978)); *see also Thompson v. Crawford,* 833 S.W.2d 868 (Mo. banc 1992). Under the most significant relationship test, the court examines where the injury occurred, where the conduct causing the injury occurred, the residence of the parties and the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflicts of Law § 145 (1971); *Thompson,* 833 S.W.2d at 870.

After a review of the record, the court concludes, consistent with the parties, that Texas law applies. The alleged conduct of Bayer that allegedly caused plaintiff's injuries occurred in Texas. Although plaintiff currently resides in Missouri, plaintiff was a resident of Texas at the time of the alleged exposure.[9]

## II. Defendant's Exposure Argument.

■■■ To succeed on his claims, plaintiff must establish causation. *See, e.g., Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 604 (Tex.1972) ("Proof of causation is a necessary element of a strict liability case."); *Nebgen v. Minnesota Mining & Mfg. Co.,* 898 S.W.2d 363, 366 (Tex.Ct.App.1995); *Walton v. Harnischfeger,* 796 S.W.2d 225, 228 (Tex.Ct.App.1990) ("An actionable tort, whether based on negligence or strict liability, includes the element of causation or cause in fact."). Under Texas law—as it is in most, if not all, other jurisdictions—causation "must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation and conjecture." *Insurance Co. of North America v. Myers,* 411 S.W.2d 710, 713 (Tex.1966). While reasonable inferences from the evidence are permissible:

a possible cause only becomes "probable" when in the absence of other reasonable causal explanations it becomes more likely than not that the injury was the result of its action. This is the outer limit of inference upon which an issue can be submitted to the jury.

*Parker v. Employers Mutual Liability Ins. Co.,* 440 S.W.2d 43, 47 (Tex.1969). Causation is the fundamentally important linchpin connecting allegedly wrongful conduct to liability and, therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *see also Celotex,* 477 U.S. at 319–20, 106 S.Ct. at 2550–51.

Defendant's first causation argument is that plaintiff has failed to adduce evidence establishing that he was actually exposed to Guthion. Defendant argues, and plaintiff does not contest, that proof of exposure to the product is an essential element of plaintiff's claims and that without evidence of such exposure plaintiff's claims collapse. Although the parties have cited no Texas case directly on point (and the court has found none), many toxic substance cases support this rather obvious proposition. *See, e.g., Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 304 (5th Cir.1990) (affirming summary judgment on causation element for defendant in case alleging injury from pesticide "because the evidence in the record does not establish the requisite exposure"); *Wright v. Willamette Industries, Inc.,* 91 F.3d 1105 (8th Cir.1996) (proof of exposure to toxic substance in levels known to produce harm required to make submissible case on causation issue) (citing cases); *In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 860 (3d Cir.1990) (holding exposure to be an element of claim for injuries from hazardous substance); *In re "Agent Orange" Prod. Liab. Litig.,* 996 F.2d 1425, 1437 (2d Cir. 1993) (requiring that plaintiffs "demonstrate with sufficient accuracy their levels of personal exposure to Agent Orange," in addition to "individual causation, i.e., that Agent

---

9. Defendant offers a further federal preemption argument, contending that plaintiff's claim is still an assertion of lack of notice. Even if Texas law

controls, however, I conclude that defendant wins.

Orange exposure caused the particular illnesses upon which they base their claims"); A Guide to Toxic Torts (MB), § 10.01[2](a), at 10–5 (1995) ("In toxic tort litigation, however, causation is not a simple matter for the jury. The plaintiff must establish by a preponderance of evidence the presence of the injury-causing substance, that he or she has been. exposed to the substance, and that the exposure has resulted in certain injuries."); *Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1533 (Kan.1990) ("In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances.").[10]

After a close review of the record, the court is left with the inescapable conclusion that plaintiff has failed to present any competent evidence that he was significantly exposed to Guthion. First, plaintiff concedes that he has no information showing he was exposed to Guthion. He failed to investigate after the two specific incidents of pesticide exposure that he recalls (one of which caused him to shortly thereafter seek medical attention) Not until four years later, and three years after he ceased being a border patrol agent, did he undertake to determine what chemicals he was exposed to while on patrol, and only then because he was diagnosed with cancer. As far as evidence of significant exposure to Guthion is concerned, his investigation was fruitless.

Although plaintiff argues that causation—and, more specifically for present purposes, exposure—can as a general rule be shown through circumstantial evidence (and a plaintiff need. not have personal knowledge of what chemical(s) he was exposed to), plaintiff's circumstantial evidence is deficient. Plaintiff argues that there is circumstantial evidence of "the use of Guthion 2L on the sugarcane crops in the area where [plaintiff] was working as a member of the Border Patrol; that it was aerially sprayed; [and] that on at least one occasion [plaintiff] was drenched with pesticide from a plane in the immediate area." Plaintiffs' Response at 9. According to plaintiff, these facts "combine" to "provide circumstantial evidence of [plaintiff's] exposure both to a pesticide and to Guthion 2L." *Id.*

Plaintiff's position lacks factual support. First, each of the farmers testified that they either did not use Guthion on sugarcane or quit spraying sugarcane before the relevant time period. The manager of the gin testified only that Guthion was sold during that time period, but not what crops it was sprayed on, or when. Whether it was used in the pertinent area is partially established, but there are some gaps in that proof. The pilots—one of whom owned Weslaco Flying Service, which, in turn, owned yellow planes—similarly either did not spray Guthion on sugarcane or could not say whether they did or not. Perhaps the most favorable testimony for plaintiff was from Frazier, who had no close relationship with the farming or spraying operations. He said there was "limited" use of Guthion on sugarcane during the years in question, but this certainly does not support a claim of exclusive, predominant, or even major use of Guthion in spraying sugarcane—which would permit argument that Guthion probably was sprayed on plaintiff.[11]

10. *See also Celotex*, 477 U.S. at 319–20, 106 S.Ct. at 2550–51 (exposure case); *In re TMI*, 67 F.3d 1103, 1118 (3d Cir.1995) ("As part of the causation inquiry, each plaintiff must demonstrate exposure to radiation released during the TMI accident.") (citing cases); *Thompson v. Southern Pacific Transp. Co.*, 809 F.2d 1167 (5th Cir.1987) (overturning jury award because, although defendant chemical company admitted that dioxin contaminated plaintiff's work environment, plaintiff's evidence as to causation was insufficient because he failed to produce adequate evidence showing that he actually was exposed to dioxin and that dioxin caused his illness); *Davis v. DuPont*, 729 F.Supp. 652, 655 (E.D.Ark.1989) (granting summary judgment to defendant where plaintiff failed to show he "had been exposed to th[e] toxic agents" of the defendant, but instead only showed that he suffered from a liver ailment, that he worked for several years in an environment that exposed him to toxic fumes, that he used products of the defendant and other manufacturers and that one of defendant's products was linked to liver damage).

11. On this point, and in other critical aspects of this case, plaintiff seems to take the position that once he has shown some possible ground for prevailing, the defendant assumes the burden of disproving the possibility. As noted by the Court

Nothing in the record, let alone in plaintiff's "circumstantial evidence" argument, connects Guthion 2L to plaintiff. The most that can be said from plaintiff's argument is that he was. sprayed with *some* pesticide in the Rio Grande Valley.[12] As to the incidents that plaintiff specifically recalls, no evidence suggests (even slightly) that the pesticide he was sprayed with or exposed to was Guthion. Although the plane that sprayed the sugarcane was apparently yellow, and companies that owned some yellow planes sprayed Guthion on crops, nothing indicates that on that occasion the yellow plane was spraying Guthion. The mere possibility that it "could have been" Guthion (on that occasion or any other) is plainly insufficient to survive summary judgment, especially considering that the undisputed evidence establishes that Guthion was rarely, if ever, sprayed on sugarcane in that area. Plaintiff's "circumstantial evidence" falls well short of establishing a "probability" of Guthion exposure.

All that is known is that plaintiff was exposed to a pesticide and that fact neither establishes exposure to Guthion nor attaches liability to Bayer.[13] Summary judgment in

favor of Bayer is appropriate because of plaintiff's inability to establish that he was significantly exposed to Guthion.[14] Because there are not competing inferences that may be drawn from the underlying evidence, *Scheerer v. Hardee's Food Systems, Inc.*, 16 F.3d 272, 275 (8th Cir.1994), no purpose would be served by permitting plaintiff to present his speculative circumstantial evidence to a trier of fact.

### III. Defendant's Medical Causation Argument.

■ Even assuming, however, that plaintiff was exposed to Guthion, summary judgment in favor of Bayer would still be appropriate. Defendant's second argument is that plaintiff is unable to demonstrate that Guthion caused his rare form of cancer, which is in the lymphoma family of diseases. In responding to summary judgment, it is plaintiff's obligation to produce sufficient evidence from which a reasonable juror could determine that it was more likely than not that his cancer would not have occurred but for exposure to Guthion. In other words, plaintiff must present admissible evidence that expo-

of Appeals in a current decision (*Tenbarge v. Ames Taping Tool Systems, Inc.*, 128 F.3d 656 (8th Cir.1997)), Missouri law does relieve a plaintiff from an obligation to "prove an absolutely positive causal connection." *Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 (Mo.1989) (en banc). The Missouri court stated it was not necessary for plaintiff "to exclude every causative factor, save that for which the defendant is liable." *Id.* This comment was made in the context of expert evidence by a veterinarian that "he had researched other possible causes for these conditions, but ruled out everything but the feed; that in his opinion 'it definitely was the feed.' " *Id.* Thus the narrowly focused targeting of defendant's product was accomplished indirectly. I find nothing in *Kircher* or in other Missouri cases that would allow plaintiff to rest on showing a mere unexplored possibility that he was exposed to defendant's product rather than the product of others, or to avoid the obligation to present reliable proof that there is probable medical causation for an illness, after considering other possibilities. In any event, Texas law rather than Missouri law is applicable here. *Compare, Kaplon v. Howmedica, Inc.*, 83 F.3d 263, 267 (8th Cir.1996) (quoting Arkansas law on a plaintiff's duty to eliminate exculpatory causes).

12. I note, but will not explore, plaintiff's reasoning backward from his medical causation theory. He contends, through Professor Cummins, that

Guthion is carcinogenic and that this is true of no other insecticide or pesticide. Therefore, if the drenching caused his condition, it must have been Guthion rather than any other pesticide or insecticide. The record offers thin support for the Cummins theory about other products (as it is thin about his Guthion theory). But even if all other products were eliminated in this manner there has been no other medical appraisal of the cause of plaintiff's condition, and no acceptable opinion that tends to exclude non-toxic explanation for the cancer. These points are dealt with below.

13. Indeed, a review of the evidence in the record suggests that, at least as to the July 1989 incident, it is more likely the plaintiff was exposed to Axodrin, which may have been extensively used on sugarcane during this timeframe. Although one suspects that the date of discontinuance of Axodrin could have been established with some precision, I do not otherwise suggest a faulty investigation—it may have become obvious the lapse of time has made it impossible to reconstruct the facts. But that does not authorize relabelling a possibility as a probability.

14. I shall assume arguendo that a jury might find that minuscule amounts of Guthion were in the air. That will be discussed below, under the medical causation issue.

sure to Guthion, to a reasonable degree of medical probability, caused his cancer. *See, e.g., Insurance Co. ·of North America v. Myers,* 411 S.W.2d 710, 713 (Tex.1966); *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 907 S.W.2d 535, 541 (Tex.Ct.App.1994). As the Texas Supreme Court has noted, "reasonable degree of medical probability":

> must, in equity and justice, be more than coincidence before there can be deemed sufficient proof for the plaintiff to go to the jury.... In the absence of reasonable probability, the inference of causation amounts to no more than conjecture and speculation.

*Schaefer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199, 202 (Tex.1980).

Plaintiff has three possible expert witnesses, Drs. Hubbard, Coffman and Cummins, in support of his opposition to summary judgment on this causation argument. *See Myers,* 411 S.W.2d at 713 (causation in cancer cases must be established through expert testimony). One of plaintiff's expert witnesses is Dr. Hubbard. Dr. Hubbard, one of plaintiff's treating physicians and an oncologist/cancer specialist, testified that he did not know what caused plaintiff's cancer. He testified that there are, to his knowledge, only three other cases of this type of cancer reported in the world literature and that plaintiff is the only male so diagnosed. Of the three other cases, not one had evidence of exposure to chemicals or pesticides. Ostensibly because it is exceedingly rare, no one in the world literature has determined a cause for this type of cancer.

 Nevertheless, Drs. Coffman and Cummins testified that in their opinion, to a reasonable degree of medical probability, exposure to Guthion caused plaintiff's cancer. A proffer of expert testimony will not, however, preclude summary judgment unless that testimony would be admissible into evidence. Rule 56(e). The rules of evidence were not designed to "make summary judgment impossible whenever a party has produced an expert to support its position." *Viterbo v. Dow Chemical Co.,* 646 F.Supp. 1420, 1424 (E.D.Tex.1986), *aff'd,* 826 F.2d 420 (5th Cir.1987). Simply stated, conclusory, unsubstantiated and unreliable opinions of causation are insufficient. It is the trial court's obligation and responsibility to screen expert testimony for both its relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 592, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993).[15] An expert opinion must have a "reliable basis in the knowledge and experience of his discipline." *Id.* More specifically, the court must determine that the expert's reasoning and methodology is scientifically valid and can be properly applied to the facts of the case. *Id.* at 592–93, 113 S.Ct. at 2796–97.

With these principles in mind, the court turns to an analysis of the opinion and testimony of Drs. Coffman and Cummins.[16] As the above discussion reveals, plaintiff's cancer is found in persons who have never been exposed to Guthion or other pesticides. Plaintiff's experts do not argue that plaintiff's cancer can be caused only by an exposure to Guthion or other toxic substances. In other words, plaintiff's cancer could have been caused by inherited genetic characteristics or other factors. With that understood, the court feels it critical to note that plaintiff's experts have not ruled out, let alone attempted to rule out, any other possible causes. For example, plaintiff's experts have not obtained the identification of or evaluated the numerous other pesticides that plaintiff may have been exposed to and whether they may have caused (or causally contributed to) plaintiff's cancer. Dr. Cummins, who is not a medical doctor, cannot evaluate or express opinions on actual possible alternate causes of plaintiff's cancer. (Counsel's objection

---

**15.** I agree with plaintiff that considerable judicial restraint should be exercised in carrying out this sensitive responsibility, which potentially endangers Seventh Amendment rights and subjects professional testimony to lay appraisal. But the jury system itself requires choices between experts. Use of judicial gatekeeping is not so strange when one considers that problems of proof are often dealt with in a quasi-scientific manner, and judges thus have professional experience with scientific methodology.

**16.** For reasons made clear below, the court finds it unnecessary to examine the general credentials of plaintiff's expert witnesses. Cummins' and Coffman's credentials and qualifications are contested by defendant.

during Cummins' deposition, Exh. A to Doc. 83, pp. 51–2).[17] It is beyond dispute that Guthion exposure was not the only possible causal agent for plaintiff's cancer. In. such circumstances, this failing alone is reason enough to exclude plaintiff's expert testimony. *See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Havner*, No. 95–1036, 1997 WL 378060, *16 (Tex. July 9, 1997) ("[I]f there are other possible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty.").[18] *See also Sorensen v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir.1994) (affirming district court's holding that expert testimony was inadmissible for failing to establish that "no other agent … could be a cause" and was therefore "subject to great potential for error"); *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194, 198–99 (5th Cir.1996) (criticizing expert testimony that "discounted the effect of tobacco while speculating that the workplace exposure [to the chemical] was the cause of [plaintiff's] brain cancer"); *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342–43 (5th Cir.1994) (affirming summary judgment where plaintiff offered "no evidence" excluding other possible causes of plaintiff's illness); *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 27 (Tex.Ct.App.1995) (plaintiff bears the burden of ruling out other possible. exposures and

causes). As noted above, far from excluding these other possible causes, Drs. Coffman and Cummins simply ignored them.

There are additional problems with the testimony and opinions of Drs. Coffman and Cummins. For example, plaintiff's experts' background information concerning plaintiff's exposure to Guthion is deficient, though this deficiency is hardly surprising on the facts of this case. Indeed, it appears that each expert merely "assumed" plaintiff was exposed to Guthion and proceeded from there.[19] Drs. Coffman and Cummins testified that they have no knowledge of the frequency or duration of plaintiff's exposure to Guthion and neither is able to estimate the total amount of exposure to Guthion. In an attempt to justify this approach and cause the court to overlook this failing, plaintiff points out that Dr. Cummins testified that dosage is irrelevant because Guthion causes gene damage, over 99% of those chemicals that cause gene damage cause cancer, and, therefore, even one molecule of Guthion could cause cancer.[20]

The fact that one molecule could cause cancer does not answer the question, however, of whether it is, to a reasonable degree of medical certainty, *probable* that exposure to some very low level of Guthion actually did cause cancer. The detailed testimony of Dr. Cummins is not essentially inconsistent with this statement, although his general unex-

17. Dr. Cummins also testified that plaintiff's medical history is not relevant unless it deals with issues related to the ability to repair damage to genes. In the absence of another reliable medical expert, the failure to examine plaintiff and take or review his medical history before concluding that Guthion caused plaintiff's cancer undermines Dr. Cummins' conclusion. *See, e.g., In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir.1994); *Wintz v. Northrop Corp.*, 110 F.3d 508 (7th Cir.1997).

18. Other Texas cases are consistent with this position. *See, e.g., E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex.1995) (failure of expert to rule out other causes of the damage rendered his opinion mere speculation); *Parker*, 440 S.W.2d at 47 (a cause is "probable" only when "in the absence of other reasonable causal explanations it becomes more likely than not that the injury was a result"). Other Texas cases express this rule of law in terms of the "most probable cause" of a plaintiff's injuries. *See, e.g., DiGrazia v. Old*, 900 S.W.2d 499, 502–03 (Tex.Ct.App.1995); *Davis v. Marshall*, 603

S.W.2d 359, 361 (Tex.Ct.App.1980); *Texas Employer's Ins. Ass'n v. Young*, 231 S.W.2d 483, 485–86 (Tex.Ct.App.1950).

19. Interestingly, Dr. Cummins testified that the basis for his "assumption" that plaintiff was exposed to Guthion differs from that of plaintiff's complaint, discovery and briefing positions. Dr. Cummins testified that crops were rotated in the Rio Grande Valley between sugarcane and cotton and Guthion was used on cotton during the relevant time period and thus plaintiff must have been exposed to Guthion incident to its application on cotton.

20. Presumably Dr. Cummins is also disinterested in the dosage used in the animal studies on which he relies, and assumes that cancer in rodents could be caused by a single molecule of exposure to Guthion. *But see Allen*, 102 F.3d at 199 (5th Cir.1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such levels, are minimal facts necessary to sustain plaintiff's burden in a toxic tort case.").

plained conclusion is to the contrary. As I understand the testimony, it treats all substances that cause gene mutation to be potentially cancer-producing, so that theoretically one molecule could suffice. Professor Cummins concedes that the scientific community generally seeks to establish thresholds of exposure that, for practical purposes, may be deemed safe enough for the use of products that have beneficial uses, with warnings to limit over-exposure. Because research has not progressed as far as Dr. Cummins deems desirable on Guthion and like chemicals, he recommends research, presumably to develop threshold levels by assessing risks. Since this has not been done, his position is that anything is possible. What must be considered, on this record, as a rather limited possibility of danger to persons in the Valley, or to farm workers, from presumably very low level exposure, cannot fairly be labeled a probable cause of plaintiff's lymphoma-type cancer.[21]

Put in familiar contexts, use of Dr. Cummins' "probability" thesis would allow all asbestosis victims living in urban areas to have causation attributed simply to their residence (based on judicial notice that asbestos levels in the atmosphere are somewhat heightened, as compared with most rural areas). A person in a room where one person may have broken a rule against smoking could claim lung cancer probably resulting from a molecule picked up from the smoker. I cannot find such theories reliable, for jury consideration, even though I recognize that second-hand smoke causation of cancer is presently a contested issue that may become a jury question when there is frequent exposure to "smoke-filled rooms." Dr. Cummins may well be a sound educator with expertise in genetic toxicology; it is a misuse of the language, however, to assert "probable cause" in this case from what is known to him.

Three studies have been conducted on Azinphos-methyl (the chemical term for Guthion). They are referred to as the 1978 National Cancer Institute Bioassay, the 1985 Hayes study and the 1987 Schmidt study. All concluded that Guthion was not carcinogenic. Dr. Cummins relied principally on information from these very studies in forming his opinion. He testified that the authors of the studies were too cautious and that his examination of the raw data led him to conclude differently. Although not a matter requiring a decision here, it is possible that the skepticism is misdirected. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) (suggesting that opinions developed "expressly for purposes of testifying," rather than growing naturally out of research conducted independent of the lawsuit, may be less reliable).[22] In any event, all three studies were conducted on rodents and courts have noted "the very limited usefulness of animal studies," especially where the results, such as those here, are equivocal. *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311–14 (5th Cir.1989). *See also Allen*, 102 F.3d at 197, and the ruling of Judge Eisele in *National Bank of Commerce v. Dow Chemical Company*, 965 F.Supp. 1490, 1527

---

21. It would appear that persons in agricultural areas (as well as in Canada and Egypt) have been subject to an involuntary experiment in the hazards of Guthion and that the present claim is the only one asserted. Neither plaintiff's type of cancer nor any other lymphoma is reported in the record as allegedly the result of those human exposures. This comment is not inconsistent with rigorous regulation to prevent a one-in-a-million casualty or with liability to susceptible persons actually injured by the product.

22. In this case Dr. Cummins is not a "professional witness," but his complete objectivity could be questioned in light of some history as a Cassandra, warning of the dangers of Guthion in Canada. See 1986 documents regarding the "Chipman Fire," in the exhibits to his deposition. Exhibit B to Doc. 83. This may be entirely commendable, but it suggests a degree of interest in plaintiff's side of the case. Dr. Cummins' lack of forensic experience, which he shares with Dr. Coffman, seems to make him inattentive to the critical distinction between possible and probable causes of an individual's illness. Note, for instance, his April 23, 1997, reference in his handwritten notes to "likely" cause—an ambiguous concept which sometimes is used to describe a possibility rather than a probability. Exhibit 2 to Exhibit B to Doc. 83. Such usage is particularly common in referring to a potentially dangerous situation. *Sierra Club v. Marsh*, 976 F.2d 763, 767 (1st Cir.1992); *State v. Green*, 18 Ohio App.3d 69, 480 N.E.2d 1128, 1132 (Ohio App. 1984); *Clinton County R–III School Dist. v. C.J.K.*, 896 F.Supp. 948, 949 (W.D.Mo.1995).

(E.D.Ark.1996).[23] There are no epidemiological studies of the effects of Guthion. Dr. Cummins conducted no study of his own in forming his opinion, nor has he subjected his opinion or analysis to any peer review. All of these shortcomings seriously undermine Dr. Cummins' opinion. What is also lacking from Dr. Cummins' analysis is evidence establishing that Guthion not only causes cancer but also evidence that Guthion causes the particular type of cancer that plaintiff suffers from. *See, e.g., Allen*, 102 F.3d at 197 (evidence that chemical caused one type of cancer "not probative on the causation of [another type of cancer]") (citing *Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d 594, 597–98 (9th Cir.1996)).

Dr. Coffman, plaintiff's cancer surgeon, is not shown to be an expert in cancer-causation. It would turn expertise upside down to allow him to say he somehow knows more about the cause of plaintiff's cancer than does Dr. Hubbard, plaintiff's oncologist/cancer specialist.[24] In any event Dr. Coffman has continuously waffled in characterizing his view as a possibility or a probability. He offers no logical support for a causation finding, as appropriately defined, other than what would be equivalent to a layman's hunch about the drenching incident, even though other possible explanations of plaintiff's condition are unknown and unevaluated.

Because the views and opinions expressed by Drs. Coffman and Cummins would not assist the trier of fact in determining the probable cause of plaintiff's cancer, the defendant's motion to strike and/or exclude the testimony of Drs. Coffman and Cummins will be granted. Because plaintiff has not produced sufficient competent evidence on the issue of causation, defendant's motion for summary judgment will also be granted.

### Conclusion

For the reasons set forth above, it is hereby

ORDERED that the defendant's motion for summary judgment is granted, and

IT IS FURTHER ORDERED that the defendant's motion to strike and/or exclude evidence proffered by plaintiff's expert witnesses Joseph E. Cummins and Avon C. Coffman is granted, and

IT IS FURTHER ORDERED that the defendant's motion to strike portions of plaintiff's response to defendant's motion for summary judgment is denied as moot.

23. One reason is suggested by Dr. Cummins' skepticism about one study because different strains of rats may have different resistance to gene mutation. One wonders why Dr. Cummins elects to rest his theory of risk on the strain of rats that is less resistant. Are they more like human beings?

24. As a practical matter, the absence of oncologist support for this claim may be fatal.