# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2026

Lyle W. Cayce
Clerk

———————

No. 25-20133

———————

Mark Vasquez,

*Plaintiff—Appellant*,

*versus*

CIMA Services, L.P.; Lubrizol Advanced Materials, Inc.;
The Lubrizol Corporation,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 4:23-CV-327

———————————————————————

Before Willett, Wilson, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Following an industrial accident in which he was severely injured, Mark Vasquez initiated this action against his employer, CIMA Services, as well as the Lubrizol Corporation and Lubrizol Advanced Materials (collectively, Lubrizol), the affiliated companies that hired CIMA to perform maintenance work at Lubrizol's chemical plant. After more than a

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

year of continuances to accommodate extensive discovery, Vasquez failed timely to submit his opposition to Lubrizol's motion for summary judgment. The district court, having warned the parties that no further continuances would be granted, denied Vasquez's emergency motion to file an opposition, treated Lubrizol's motion as unopposed, and granted summary judgment. Vasquez appeals, contending that the district court abused its discretion by refusing to allow his untimely opposition and erred in granting summary judgment. We affirm.

## I.

Lubrizol operates a chemical processing plant (the 116 Unit) in Deer Park, Texas. The facility processes hazardous chemicals, including chlorine, into consumer products. In October 2022, Lubrizol contracted CIMA to install new valves and pressure test chlorine pipelines at the 116 Unit. As part of its facility safety process, Lubrizol was required to issue a "safe work permit" before CIMA employees began maintenance. This permit certified that CIMA's work could safely begin and recommended a minimum level of personal protective equipment (PPE). While certain PPE belonging to Lubrizol and stored at the plant could only be accessed with approval from Lubrizol supervisors, CIMA and its employees, including Mark Vasquez, were free to use their own PPE and take additional safety measures beyond those suggested by the permit.

On the morning of the scheduled maintenance, Lubrizol employees at the 116 Unit attempted to purge any hazardous chemicals from the pipelines that CIMA would be servicing. Using pressure testing, Lubrizol employees determined that no toxic gas remained in the affected pipeline. However, in the safe work permit issued to CIMA, Lubrizol indicated that atmospheric monitoring detected the presence of chlorine in the plant more broadly. Shortly before Vasquez began work, CIMA conducted similar pressure

testing, again indicating that no gas remained in the relevant section of pipe. Vasquez alleges that Lubrizol workers failed properly to seal the pipeline or cover open flanges on the line, allowing toxic chlorine gas to accumulate in the pipe. As a result, Vasquez alleges, he was exposed to a sudden leak of toxic gas as he began retorquing a section of pipe, resulting in serious injury to his throat and lungs.

Vasquez filed this action in Texas state court in January 2023, alleging state-law negligence claims against Lubrizol, as well as his employer CIMA. Lubrizol removed the case to federal court, where the district court initially set a deadline of January 29, 2024, for dispositive motions. Seeking more time to conduct discovery and retain experts, the parties jointly requested a continuance of that deadline in November 2023. The district court granted this request and reset the deadline for dispositive motions to August 12, 2024. In August 2024, both parties again jointly moved to postpone the summary judgment deadline. The district court granted this second motion, setting a new deadline of February 5, 2025, but cautioned the parties that they "should not count on an additional extension[.]"

On the eve of this third deadline, the parties again jointly moved to extend the deadline for dispositive motions, this time for a month, to March 5, 2025. The district court granted relief in part, resetting the dispositive motions deadline to February 25, 2025. But the court made clear in its order that it would "not grant any further extensions." The district court also set March 12, 2025, as the deadline for response to any dispositive motion and March 17, 2025, as the deadline for any reply. This schedule slightly compressed the normal timeframe for summary judgment briefing under the local rules, from 21 days to 15 days. *See* S.D. Tex. R. 7.3 ("Opposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance by counsel.").

Lubrizol timely moved for summary judgment. The deadline for Vasquez's response, March 12, came and went. On March 17, Lubrizol filed a reply, noting that Vasquez failed to oppose its earlier motion. Later that day, Vasquez filed an emergency motion for leave to file a response. Vasquez also attached the text of his proposed response and several exhibits, most prominently an expert report by Benjamin Gibson, an industry safety specialist. In his motion for leave, Vasquez asserted that his lapse was caused by a legal assistant's clerical error. The district court denied Vasquez's motion, noting that it had "made clear that the deadline for [summary judgment motions] would be moved to February 25, 2025, and that any response briefs would be due by March 12, 2025," and citing its earlier warning that no further extensions would be granted.

Vasquez sought reconsideration of the order denying the motion for leave, arguing that his failure to submit a response was excusable. *See* Fed. R. Civ. P. 6(b)(1)(B). Vasquez asserted that his counsel's legal assistant, in circulating Lubrizol's motion for summary judgment, emailed four attorneys on the matter to ask whether the response was due on March 17. One attorney, Adam Lewis, responded to the assistant and the other attorneys that March 12 was the deadline. According to the assistant's affidavit, she missed this correction and relied instead on the district court's minute entry page, which automatically calculated the due date under the local rules as March 18. The district court denied Vasquez's motion for reconsideration.

On March 28, 2025, the district court held a hearing on Lubrizol's motion for summary judgment, addressing the record as well as some of the arguments put forward in Vasquez's untimely opposition. The district court granted summary judgment a few days later. *See Vasquez v. CIMA Servs., L.P.*, 2025 WL 1842628 (S.D. Tex. Apr. 1, 2025). In its order, the district court noted that Vasquez had not opposed Lubrizol's motion, and so

accepted the facts as alleged by Lubrizol as undisputed. *Id.* at \*1–2; *see* Fed. R. Civ. P. 56(e)(2). Consequently, the district court concluded that Vasquez had failed to substantiate his claims and that Lubrizol was entitled under Texas law to summary judgment on Vasquez's negligence claims. *Id.* at \*2. Vasquez now appeals.

## II.

Vasquez first contends that the district court should have allowed his untimely opposition to summary judgment. We review a district court's decision not to allow an untimely filing for abuse of discretion. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006).

"A district court has exceedingly wide discretion in scheduling," and may consider "not only the facts of the particular case, but also all of the demands on counsel's time and the court's time." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687 (5th Cir. 2017) (internal quotation marks omitted). Under Rule 6(b), "[w]hen an act may or must be done within a specified time, the court *may*, for good cause, extend the time[.]" Fed. R. Civ. P. 6(b)(1) (emphasis added). But when a party does not seek an extension until the relevant filing deadline has already passed, such extensions may *only* be granted "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

We could fairly end our inquiry with the language of Rule 6(b) itself. The Rule is permissive, not mandatory, and "grant[s] broad discretion [to the district court] to expand filing deadlines." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 & n.5 (1990) (explaining that post-deadline extensions under Rule 6(b) are merely "permissible" and that district courts are not compelled to grant them). "[A]ny grant of an extension of time for when an act must be done falls to the district court's discretion." *McCarty v. Thaler*, 376 F. App'x

442, 443 (5th Cir. 2010) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)). And even if Vasquez made the necessary showing that "excusable neglect" caused his delay, "it nonetheless remain[ed] a question of the court's discretion whether to grant any motion under Rule 6(b)." *Id.* (citing *Lujan*, 497 U.S. at 894–98).

Here, the district court's summary judgment deadlines were reasonable, only differing by a few days from the parties' (third) requested extension. The district court had also distinctly warned counsel that further extensions would not be permitted. Under these circumstances, refusing Vasquez a belated extension to file his untimely opposition was not an abuse of discretion, even if his counsel's delay was inadvertent. *See Adams*, 465 F.3d at 161–62 (no abuse of discretion in district court's refusal to consider opposition filed just one day late); *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740–41 (5th Cir. 2010) (district court did not abuse discretion by refusing to grant post-deadline extension after lengthy continuances had already been granted); *see also Hunt v. Tex. Mut. Ins. Co.*, 54 F. App'x 799, 2002 WL 31845832, at *1 (5th Cir. 2002) ("A trial court's expectation that litigants abide by court rules can in no way be characterized as an abuse of discretion.").

The district court's decision to disallow Vasquez's untimely opposition was entrusted to that court's broad discretion. Even so, Rule 6(b) allowed the district court to grant a post-deadline extension *only if* Vasquez's delay was attributable to "excusable neglect." Fed. R. Civ. P. 6(b). Excusable neglect is a "somewhat elastic concept," one which "tak[es] account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392, 395 (1993). In determining whether Vasquez's neglect was "excusable," we consider (1) the prejudice to Lubrizol; (2) the length of Vasquez's delay and its impact on the proceeding; (3) the reason for the delay and whether it was within

Vasquez's control; and (4) whether Vasquez acted in good faith. *See Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012).

Accepting *arguendo* that Vasquez acted in good faith and that the prejudice to Lubrizol and delay of the proceedings were minimal, Vasquez has not established that his counsel's untimeliness was excusable. The sole excuse offered by Vasquez for his delay is that the district court's deadline differed from what local rules would normally impose, confusing his counsel's assistant. But such inadvertent mistakes "do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392; *see also Draper v. KK Ford, L.P.*, 196 F. App'x 264, 265 (5th Cir. 2006) (citing *Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990)) ("A busy practice does not constitute excusable neglect."). While some courts, in their discretion, have found excusable neglect where attorneys were reasonably unaware of deadlines or where the district court itself had issued contradictory scheduling orders, mere inattentiveness is generally not excusable. *See Broussard v. Johnson*, 254 F.3d 71, 2001 WL 502799, at *2 (5th Cir. 2001) (discussing cases). Here, the district court clearly announced the operative deadlines in its orders, and Vasquez's counsel knew of the deadline for filing an opposition. But his assistant mistakenly followed an incorrect minute entry rather than counsel's directive based on the court's actual order. Such an error does not amount to excusable neglect, and even if it did, granting any extension "nonetheless remain[ed] a question of the court's discretion[.]" *McCarty*, 376 F. App'x at 443 (citing *Lujan*, 497 U.S. at 894–98).

On the record before us, Vasquez has not demonstrated any "excusable neglect" that would permit the district court to indulge a post-deadline extension. And even if he had, the district court could not be *compelled* to offer such an extension. *See* Fed. R. Civ. P. 6(b). The district court did not abuse its discretion in refusing to allow Vasquez's untimely opposition to summary judgment.

No. 25-20133

## III.

The only remaining question is whether Lubrizol was entitled to summary judgment. We review a grant of summary judgment *de novo*. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Clark v. La. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

Both parties agree that Chapter 95 of the Texas Civil Practice and Remedies Code applies to the negligence claims against Lubrizol. Chapter 95 shields premises owners, such as Lubrizol, from negligence liability stemming from the actions of independent contractors, with limited exceptions. *See* Tex. Civ. Prac. & Rem. Code Ch. 95. Applied here, Lubrizol could only be liable for Vasquez's injuries if Lubrizol both (1) exercised control over the manner in which Vasquez performed his work and (2) had actual knowledge of the danger or condition resulting in the injuries but failed adequately to warn of the risks. *See id.* § 95.003. At summary judgment, Vasquez bore the burden of demonstrating that a factual dispute remained as to *both* prongs; failure to substantiate one with regard to *either* Lubrizol's control or actual knowledge would entitle Lubrizol to summary judgment. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 697–99 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

8

Vasquez contends that the district court's refusal to allow his untimely opposition meant that the resulting summary judgment for Lubrizol "[was] comparable to granting a default judgment." He recites our precedent instructing that default judgments "are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).

This argument is simply irrelevant: Default judgments are only granted "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). That is not the case here, and thus the authorities presented by Vasquez analyzing true defaults under Rule 55 are inapt. *See, e.g.*, *Sun Bank of Ocala*, 874 F.2d at 276–77. Instead, the procedure followed by Lubrizol and the district court in this case was a straightforward motion for summary judgment, one which the district court permissibly treated as unopposed once Vasquez failed to file a timely response. *See* Fed. R. Civ. P. 56.

Vasquez retreats to a more defensible variant of this argument (though he articulates it only in his reply brief) grounded in our longstanding approach to unopposed motions for summary judgment:

> A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a [court] rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (internal citation omitted). However, when a nonmovant does not respond to a motion for summary judgment, the district court may accept as undisputed the facts presented in support of the motion and grant the motion if those facts represent "a prima facie showing of entitlement to judgment." *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (collecting cases); *see also* Fed. R. Civ. P. 56(e)(2).

This is precisely what the district court did here. Because Vasquez had not opposed Lubrizol's motion, the district court permissibly accepted the facts alleged by Lubrizol as undisputed. *See* Fed. R. Civ. P. 56(e)(2). Based on those facts, the district court concluded that Lubrizol had demonstrated that it had no control, either actual or contractual, over the manner in which Vasquez worked, nor any actual knowledge of the dangerous conditions that caused his injuries. *See* Tex. Civ. Prac. & Rem. Code § 95.003. The district court observed that Lubrizol's services agreement with CIMA expressly disclaimed any control over "the manner, method or operative details of the work [done by CIMA]." Further, Vasquez's own testimony indicated that no Lubrizol employee exercised control over his work, and that only CIMA supervisors provided him with protective equipment and instruction on how to complete his work safely. The district court also cited uncontested evidence that Lubrizol employees had verified that no gas was present in the pipeline to be serviced, and that Lubrizol employees left the area and could not have learned of any later gas buildup before maintenance began. On this basis, the district court concluded that Lubrizol had presented "a prima facie showing of entitlement to judgment" under Chapter 95. *Eversley*, 843 F.2d at 174. Thus, the court's grant of summary judgment, far from being "solely" due to default, was well-founded on the factual record before it. *Hibernia Nat'l Bank*, 776 F.2d at 1279.

**B.**

Vasquez's appeal relies heavily on evidence submitted with his untimely opposition, at least some of which was considered by the district court at the summary judgment hearing. This evidence was untimely, so it was properly excluded from the summary judgment record. *See Lopez v. Laborers Int'l Union, Loc. No. 18*, 987 F.2d 1210, 1213 n.9 (5th Cir. 1993) (citing *Geiserman*, 893 F.2d at 790–91) ("[I]t is clear that the district court could [refuse] to consider . . . late filed summary judgment evidence."). But even if the post-deadline evidence proffered by Vasquez to bolster his appeal were considered, summary judgment would remain proper.

First, Vasquez contends that fact issues remain as to whether Lubrizol controlled his work for CIMA. Vasquez rests this argument on Texas precedent finding actual control where an employer requires a contractor to observe workplace "safety requirements and procedures" that "unreasonably increase, rather than decrease, the probability and severity of injury." *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 358 (Tex. 1998) (per curiam). Vasquez notes that (1) CIMA required a safety permit from Lubrizol to begin work; (2) the safety permit at issue alerted CIMA to the risk of chlorine exposure but did not recommend respiratory protections; and (3) CIMA workers required approval from Lubrizol to access PPE equipment stored at the 116 Unit.

This line of argument fails. First, the presence of a safety permit system "does not serve as evidence that [contractors] were not free to do the work in their own way and is not evidence that [Lubrizol] controlled the method of work or its operative details." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 608 (Tex. 2002). Nor does it negate the record evidence indicating that CIMA and Vasquez were free to take added safety measures based on the risks that Lubrizol—or CIMA—identified. The fact that Lubrizol's safety

recommendations omitted respiratory protection does not establish control either. *See Fitz v. Days Inn Worldwide, Inc.*, 147 S.W.3d 467, 473 (Tex. App.—San Antonio 2004, pet. denied) ("Merely exercising or retaining a general right to recommend a safe manner for the independent contractor to perform their work is not enough to subject a premises owner to liability."); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (no liability under Chapter 95 where the owner merely "recommend[ed] a safe manner for the independent contractor's employees to perform the work"). And Vasquez never alleges that Lubrizol refused CIMA employees access to PPE—he merely alleges that access to Lubrizol's own equipment required Lubrizol approval. *See Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Actual control is not established by evidence showing that the premises owner maintained general control of the facilities."). Even taking into account his untimely summary judgment evidence, Vasquez cannot substantiate his allegation that Lubrizol exercised control over his work. *See Mendez*, 967 S.W.2d at 358.

Vasquez's assertion that Lubrizol had actual knowledge of the risk of chlorine exposure is similarly weak. Vasquez contends that Lubrizol was aware that chlorine gas might be present in the area where Vasquez was to work, a risk that was acknowledged in the safety permit. Vasquez goes on to assert that Lubrizol, in addition to conducting pressure testing that revealed no gas remaining in the pipeline, should have also performed atmospheric chlorine testing on the relevant lines to reduce the possibility that toxic gas might seep in. However, "[a]ctual knowledge" within the meaning of Chapter 95 "requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge[,] which can be established by facts or inferences that a dangerous condition could develop over time." *Ineos USA, L.L.C. v. Elmgren*, 505 S.W.3d 555, 568 (Tex. 2016).

The evidence presented by Vasquez in his untimely opposition and on appeal—at best—establishes that Lubrizol had "constructive knowledge" that exposure was possible; it does not suggest actual knowledge of any "dangerous condition [that] existed at the time of the accident[.]" *Id.* His evidence thus would not establish a factual dispute regarding Lubrizol's knowledge of the presence of toxic gas.

The district court was not required to "sift through the record in search of evidence" to support Vasquez's position, and the evidence attached to Vasquez's untimely opposition was properly excluded. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). But even that evidence fails to establish a factual dispute as to Lubrizol's control or actual knowledge of danger, such that Lubrizol would be entitled to summary judgment on Vasquez's negligence claims regardless.

## IV.

Finally, Vasquez contends that, should factual issues remain as to Lubrizol's liability under Chapter 95, summary judgment on his underlying negligence claims would also be inappropriate under the common law. But because Lubrizol was shielded from liability from Vasquez's negligence claims by Chapter 95 such that summary judgment was appropriate, we need not address those arguments. *See Milton v. Tex. Dep't of Crim. Just.*, 707 F.3d 570, 572 (5th Cir. 2013) (Summary judgment may be affirmed "on any grounds supported by the record.").

* * *

The failure of Vasquez's counsel to file a timely opposition to summary judgment was a costly error. Nevertheless, the district court did not abuse its broad discretion in refusing to allow Vasquez's belated opposition. On the summary judgment record properly before it (and even considering the evidence put forth by Vasquez in his untimely opposition),

13

No. 25-20133

no material factual dispute remained, and Lubrizol was entitled to summary judgment under Texas law.

    The judgment of the district court is

AFFIRMED.